PINILISHALPERN, LLP
Jeffrey S. Mandel, Esq.
160 Morris Street
Morristown, NJ  07960
(973) 401-1111
(973) 401-1114 fax
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

CHRISTINE BERNAT,

               Plaintiff,

v.

STATE OF NEW JERSEY
DEPARTMENT OF CORRECTIONS,
EDNA MAHAN CORRECTIONAL
FACILITY FOR WOMEN, WILLIAM
HAUCK, administrator of the Edna Mahan
Correctional Facility for Women, ERICK
MELGAR, JANETTE BENNETT,
ALFRED E. SMALLS, JEFFREY S.
ELLIS, LANCE K. JOHNSON, all
individually and in their capacity as a
current and/or former State Correctional
Officer, JOHN DOE 1-10, and JOHN DOE
ENTITY 1-10,

               Defendants.

---

Hon.
Civil Case No.

**COMPLAINT**
**and**
**JURY DEMAND**

---

      Plaintiff Christine Bernat, by and through counsel, complains of the Defendants State of New Jersey Department of Corrections, Edna Mahan Correctional Facility for Women, William Hauck, Erick Melgar, Janette Bennett, Alfred E. Smalls, Jeffrey S. Ellis, Lance K. Johnson, John Doe 1-10, and John Doe Entity 1-10, as follows:

## PARTIES

1.      Plaintiff Bernat is an individual residing in the Borough of Audubon, County of Camden, State of New Jersey.

2.      Upon information and belief, Defendant State of New Jersey Department of Corrections (Defendant NJDOC) is a governmental body and public entity represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at P.O. Box 080, Trenton, State of New Jersey.

3.      Upon information and belief, Defendant Edna Mahan Correctional Facility for Women (Defendant Facility) is a governmental body and public entity with a principal place of business at P.O. Box 4004, Clinton, State of New Jersey, and is represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at P.O. Box 080, Trenton, State of New Jersey.

4.      Upon information and belief, Defendant William Hauck (Defendant Administrator Hauck) is an individual who, at all times relevant to the causes of action herein, was an employee of Defendant NJDOC, serving as Administrator for Defendant Facility, with a principal place of business at P.O. Box 4004, Clinton, State of New Jersey, and is represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at P.O. Box 080, Trenton, State of New Jersey.

5.      Upon information and belief, Defendant Erick Melgar (Defendant Senior Correction Officer Melgar) is an individual who, at all times relevant to the causes of action herein, was an employee of Defendant NJDOC, serving as a correction officer for Defendant Facility, with a principal place of business at P.O. Box 4004, Clinton, State of

New Jersey, and is represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at P.O. Box 080, Trenton, State of New Jersey for certain conduct herein.  He is additionally identified as a party in his individual capacity.  For uncovered claims, he is an individual residing at an unknown location believed to be in the State of New Jersey or Pennsylvania.

6.     Upon information and belief, Janette Bennett (Defendant Senior Correction Officer Bennett) is an individual who, at all times relevant to the causes of action herein, was an employee of Defendant NJDOC, serving as a correction officer for Defendant Facility, with a principal place of business at P.O. Box 4004, Clinton, State of New Jersey, and is represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at P.O. Box 080, Trenton, State of New Jersey for certain conduct herein.  She is additionally identified as a party in her individual capacity.  For uncovered claims, she is an individual residing at an unknown location.

7.     Upon information and belief, Alfred E. Smalls (Defendant Senior Correction Officer Smalls) is an individual who, at all times relevant to the causes of action herein, was an employee of Defendant NJDOC, serving as a correction officer for Defendant Facility, with a principal place of business at P.O. Box 4004, Clinton, State of New Jersey, and is represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at P.O. Box 080, Trenton, State of New Jersey for certain conduct herein.  He is additionally identified as a party in his individual capacity.  For uncovered claims, he is an individual residing at an unknown location.

8.     Upon information and belief, Jeffrey S. Ellis (Defendant Sergeant Ellis) is an individual who, at all times relevant to the causes of action herein, was an employee of Defendant NJDOC, serving as a correction officer for Defendant Facility, with a principal place of business at P.O. Box 4004, Clinton, State of New Jersey, and is represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at P.O. Box 080, Trenton, State of New Jersey for certain conduct herein.  He is additionally identified as a party in his individual capacity.  For uncovered claims, he is an individual residing at a currently unknown location.

9.     Upon information and belief, Lance K. Johnson (Defendant Sergeant Johnson) is an individual who, at all times relevant to the causes of action herein, was an employee of Defendant NJDOC, serving as a correction officer for Defendant Facility, with a principal place of business at P.O. Box 4004, Clinton, State of New Jersey, and is represented by the Office of the Attorney General for the State of New Jersey with a principal place of business at P.O. Box 080, Trenton, State of New Jersey for certain conduct herein.  He is additionally identified as a party in his individual capacity.  For uncovered claims, he is an individual residing at a currently unknown location.

10.     Defendant John Doe 1-10 and/or John Doe Entity 1-10 (collectively referred to herein as "John Doe 1-10") is a governmental body and/or public entity, private entity, and/or an individual that caused and/or contributed to the abuse of Plaintiff Bernat, whether through an affirmative act and/or an omission under circumstances upon which there was a duty to act, whether such affirmative act and/or omission occurred prior to the abuse, simultaneous, and/or after, including but not limited to causing,

contributing, aiding and abetting, altering and/or hiding or otherwise interfering with the reporting of the circumstances of the abuse and/or failing to take and/or report action to prevent the abuse and/or treatment of it.

## JURISDICTION AND VENUE

11.    Jurisdiction of this Court is invoked pursuant to 28 *U.S.C.* § 1331, inasmuch as the allegations in this matter are derived from 42 *U.S.C.* § 1983 and because 28 *U.S.C.* § 1343(a) places original jurisdiction in this Court for actions alleging a violation of one's civil rights, including any violation of 42 *U.S.C.* § 1985.  This Court has supplemental jurisdiction over causes of action arising under the laws of the State of New Jersey pursuant to 28 *U.S.C.* § 1367.

12.    Venue is properly laid in the District of New Jersey by virtue of 28 *U.S.C.* § 1391(b), as the events and/or omissions giving rise to the claims occurred in this district and because the parties predominantly reside in this district.

## FACTUAL BACKGROUND

13.    Defendant NJDOC is supposed to preserve and protect the rights of sexual assault victims in its prisons and correctional facilities.

14.    Correction officers serve as the principal agent of Defendant NJDOC to ensure that corrections facilities are operated in a safe, orderly and structured fashion.

15.    Defendant NJDOC is supposed to maintain a zero tolerance policy for the incidence of sexual assault.

16.     Defendants individually and/or collectively were legally responsible for the general welfare of Plaintiff Bernat while she remained under the care and supervision of Defendants NJDOC and the Facility.

17.     In 2008, Defendant Senior Correction Officer Melgar, while employed by Defendants NJDOC and the Facility engaged in inappropriate relations with a female inmate at the Facility.

18.     In 2008, Defendants NJDOC, Facility, Defendant Administrator Hauck, and/or John Doe received written and/or verbal notice that Defendant Senior Correction Officer Melgar engaged in inappropriate relations and/or had improper conduct with a female inmate.

19.     In 2008, Defendants NJDOC, Facility, Defendant Administrator Hauck, and/or John Doe received written and/or verbal notice that Defendant Senior Correction Officer Melgar specifically engaged in: (i) one or more sexual relations with a female inmate; (ii) undue or excessive familiarity with one or more female inmates; and/or (iii) assaulted one or more female inmates.

20.     In 2008, Defendants NJDOC, Facility, Defendant Administrator Hauck, and/or John Doe received written notice that Defendant Senior Correction Officer Melgar: (i) hit one or more female inmates with an object; (ii) was "playing" with one or more female inmates; and/or (iii) engaged in behavior in a manner reported by one or more female inmates to constitute aggravated sexual assault.

21.     In 2008, Defendant Correction Officers Bennett, Smalls, and/or John Doe received written and/or verbal notice that Defendant Senior Correction Officer Melgar engaged in inappropriate relations and/or conduct with a female inmate.

22.     In 2008, Defendant Sergeant Ellis received written and/or verbal notice that Defendant Senior Correction Officer Melgar engaged in one or more sexual relations with a female inmate and/or engaged in undue or excessive familiarity with one or more female inmates.

23.     In 2009, Plaintiff Bernat entered Defendant Facility as an inmate.

24.     While Plaintiff Bernat was in the care and custody of Defendant NJDOC, and while housed at Defendant Facility, Defendant Senior Correction Officer Melgar sexually assaulted Plaintiff, including but not limited to groping her, pinching her nipples, kissing her, having her position herself in a sexual way, having her perform oral sex, and having her engage in unprotected intercourse.

25.     While Plaintiff Bernat was in the care and custody of Defendant NJDOC, and while housed at Defendant Facility, Defendant Senior Correction Officer Melgar physically assaulted Plaintiff, including striking her with his hands and with objects, including but not limited to throwing ice at her and striking her with a ruler.

26.     After Defendant Senior Correction Officer Melgar was re-assigned to allegedly prevent contact with Plaintiff Bernat, Defendant Senior Correction Officer Bennett and Defendant Sergeant Ellis transmitted messages from Defendant Senior Correction Officer Melgar to the Plaintiff.

27.     After Defendant Senior Correction Officer Melgar was re-assigned to allegedly prevent contact with Plaintiff Bernat, Defendant Senior Correction Officer Bennett conspired with Defendant Senior Correction Officer Melgar to interfere with any investigation by the Special Investigations Division into Melgar's conduct.

28.     After Defendant Senior Correction Officer Melgar was re-assigned to allegedly prevent contact with Plaintiff Bernat, Defendant Senior Correction Officer Bennett conspired with Defendant Senior Correction Officer Melgar to have inmates prepare false positive statements about Melgar to interfere with any investigation by the Special Investigations Division into Melgar's conduct.

29.     While Plaintiff Bernat was in the care and custody of Defendant NJDOC, and while housed at Defendant Facility, Defendant Senior Correction Officer Smalls also molested and sexually assaulted Plaintiff Bernat, including kissing her and grabbing her breasts.

30.     Some of the assaults by Defendant Senior Correction Officer Smalls took place in a private bathroom reserved for correction officers.

31.     The encounters with Defendant Senior Correction Officer Smalls would have, and should have, been readily discernable by a guard monitoring security cameras, though, upon information and belief, no guard reported his conduct.

32.     As part of Defendant Senior Correction Officer Smalls's ploy to prevent Plaintiff Bernat from reporting his conduct, Defendant Senior Correction Officer Smalls tried to bribe Plaintiff with prison perks and contraband.

33.    Defendant Senior Correction Officers Smalls and Melgar knew of each other's conduct towards Plaintiff.

34.    After Plaintiff Bernat reported the sexual abuse, Defendants individually and/or in concert attempted to prevent Plaintiff from communicating with her attorney.

35.    Defendants individually and/or in concert notified Plaintiff that her mail was not legal correspondence when, in fact, it was known to be a communication between Plaintiff and her attorney and notified Plaintiff that letters to her attorney were no longer being considered legal mail, with the clear implication that they would confiscate and/or review any mail sent to her attorney.

36.    Defendant NJDOC's and Facility's policy forbids opening, reading or censoring legal correspondence.

37.    After Plaintiff Bernat reported the sexual abuse, Defendants individually and/or in concert retaliated against Plaintiff, including reporting her for possession of contraband when the items seized were not prohibited items under Defendant NJDOC's and Facility's regulations.

38.    In response to a prior complaint by one or more female inmates about inappropriate behavior by Defendant Senior Correction Officer Melgar, Defendants individually and/or in concert retaliated against her by performing cell searches resulting in damage to her property.

39.    Defendant Sergeant Johnson was also aware of Defendant Senior Correction Officer Melgar's sexual abuse of Plaintiff.

40.    Defendant Sergeant Johnson allowed inmates to harass Plaintiff in retaliation for Plaintiff reporting the sexual abuse.

41.    Defendant Sergeant Johnson would comment to Plaintiff in front of other inmates that if she wanted harassment to stop she would first have to "take Officer Melgar's [censored word] out of your mouth" or words to that effect.

42.    Defendants' campaign of retaliation included write-ups against Plaintiff for fabricated conduct.

43.    After Plaintiff Bernat reported the sexual abuse, Defendants individually and/or in concert had Defendant Sergeant Ellis speak to Plaintiff to limit what she could and/or should say to investigators from the Special Investigations Division.

44.    Defendant Sergeant Ellis notified Plaintiff that he has an "inside contact", or words to that effect, at the Special Investigations Division and that she should deny what happened because nobody will be able to prove the conduct of Defendant Senior Correction Officer Melgar.

45.     Defendant Sergeant Ellis notified Plaintiff that "[he does not] know why inmates tell on officers because you never know what will happen once you get released" from prison and "girls end up dead in a parking lot somewhere" when they talk, or words to that effect.

46.    Similarly, Defendant Senior Correction Officer Melgar made it clear to Plaintiff that, upon being questioned, she was to respond that "nothing ever happened".

47.    Defendant Administrator Hauck waited until on or about June 24, 2010 before he even referred the matter to the Special Investigations Division.

48.     After several other inmates corroborated Plaintiff Bernat's reports of being repeatedly sexually assaulted by Defendant Senior Correction Officer Melgar, and only after the evidence was too great to continue to ignore, Defendant Facility initiated administrative dismissal proceedings against Melgar and other correction officers who facilitated his conduct and/or failed to report it.

49.     The last act of sexual abuse occurred on or about June 20, 2010.

50.     The Special Investigations Division confirmed that Defendant Senior Correction Officer Melgar physically, sexually, and mentally abused Plaintiff.

51.     The Special Investigations Division confirmed that Defendant Senior Correction Officer Melgar engaged in both oral and unprotected intercourse with Plaintiff.

52.     The Special Investigations Division confirmed that Defendant Senior Correction Officer Melgar acted in an unprofessional and demeaning way towards Plaintiff.

53.     The Special Investigations Division confirmed that Defendant Senior Correction Officer Bennett was complicit in covering up inappropriate behavior of Defendant Senior Correction Officer Melgar.

54.     The Special Investigations Division confirmed that Defendant Senior Correction Officer Smalls was unduly familiar with Plaintiff Bernat.

55.     Plaintiff timely served Tort Claims Act notices on or about September 3, 2010.

56.     On or about November 8, 2011, Plaintiff Bernat was released from the custody and control of Defendants NJDOC and the Facility.

57.     Internal disciplinary actions resulted in eventual dismissals and/or suspensions of Defendant Senior Correction Officers Bennett, Smalls, and Melgar.

58.     An Administrative Law Judge ruled against Defendant Senior Correction Officers Smalls after making credibility findings and rejecting his denials at an administrative hearing.  Defendant Senior Correction Officers Bennett entered into a settlement to avoid additional penalties.  Defendant Senior Correction Officers Melgar's denials were similarly rejected, and he withdrew an appeal of his termination.

59.     At all relevant times, Defendants were in uniform and/or conducting themselves under the authority of Defendants NJDOC and the Facility.

60.     At all relevant times, Defendants jointly and/or severally had a policy, custom, usage, and/or practice known by and/or uncontrolled by a decision-maker with final policymaking authority that assisted, condoned and/or otherwise enabled Defendants to act in a manner contrary to law that resulted in the repeated and prolonged sexual abuse of Plaintiff Bernat.

61.     At all relevant times, Defendants jointly and/or severally engaged themselves in a negligent, grossly negligent, wanton, reckless and/or malicious manner.

62.     At all relevant times, Defendants aided and abetted each other's violations of the law and/or illegal conduct.

## FIRST COUNT
### (Violation of the Federal Civil Rights Act,
### 42 *U.S.C.* § 1983, 1985, and 1986, and Conspiracy)

63.     Plaintiff Bernat incorporates by reference the preceding paragraphs.

64.     42 *U.S.C.* § 1983 provides in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured[.]"

65.     Defendants jointly and/or severally, under color of law, engaged in and/or conspired to engage in acts and/or omissions that breached federal law including 42 *U.S.C.* § 1983 and deprived Plaintiff Bernat of the rights afforded to her under 42 *U.S.C.* § 1983, including but not limited to depriving her of her right to due process under the Fourteenth Amendment and right to be free from cruel and unusual punishment under the Eighth Amendment.

66.     Defendants jointly and/or severally witnessed and/or observed one or more of each other violating Plaintiff Bernat's rights and, though having the ability and having taken an oath to safeguard the public, failed to intervene.

67.     Defendants are persons and/or entities covered under the Federal Civil Rights Act.

68.     In addition to directly violating the law, Defendants aided and abetted the other Defendants to violate the law and/or conspired for same.

69.    As a direct and proximate result of the violation of 42 *U.S.C.* § 1983 by Defendants individually and/or jointly, Plaintiff Bernat suffered damages including but not limited to the deprivation of her Federal Constitutional rights and conscious pain and suffering.

70.    The aforementioned conduct of Defendants occurred in concert and in furtherance of a scheme to deprive Plaintiff Bernat of her rights, in violation of 42 *U.S.C.* §§ 1983, 1985.

71.    The aforementioned conduct evidences knowledge of a violation of 42 *U.S.C.* § 1983, a conspiracy under 42 *U.S.C.* § 1985, and a failure to prevent the harm under 42 *U.S.C.* § 1986.

WHEREFORE, Plaintiff Bernat respectfully seeks against Defendants individually, jointly and/or severally:

a)    Damages, including but not limited to pain and suffering, emotional distress, and any other damages set forth herein and/or reasonably inferred from the allegations herein;

b)    Punitive damages against Defendants who acted in their individual capacity;

c)    Attorneys' fees and costs, as expressly authorized in 42 *U.S.C.* § 1988(b), and as otherwise authorized by common law and/or statute; and

d)    Such other relief as the Court deems fair and just, including interest and costs of suit.

**SECOND COUNT**
**(Violation of the New Jersey Civil Rights Act)**

72.     Plaintiff Bernat incorporates by reference the preceding paragraphs.

73.     The New Jersey Civil Rights Act (NJCRA), *N.J.S.A.* 10:6-1, *et seq.*, which is analogous but independent to the Federal Civil Rights Act, 42 *U.S.C.* § 1983, creates a cause of action for violating one's rights under the Federal and/or State Constitution, including the prohibition against cruel and unusual punishment.

74.     The NJCRA, and specifically *N.J.S.A.* 10:6-2, provides in pertinent part, "Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief."

75.     Defendants jointly and/or severally engaged in and/or conspired to engage in acts and/or omissions that breached the NJCRA and deprived Plaintiff Bernat of the rights afforded to her under the NJCRA, including but not limited to depriving her of her right to be free from cruel and unusual punishment under the Eighth Amendment and under Article 1, paragraph 12 of the State Constitution.

76.     Defendants are persons and/or entities covered under the NJCRA.

77.     In addition to directly violating the law, Defendants aided and abetted the other Defendants to violate the law and/or conspired for same.

78.     As a direct and proximate result of the violation the NJCRA by Defendants individually and/or jointly, Plaintiff Bernat suffered damages including but not limited to the deprivation of her State Constitutional rights and conscious pain and suffering.

WHEREFORE, Plaintiff Bernat respectfully seeks against Defendants individually, jointly and/or severally:

a)     Damages, including but not limited to pain and suffering, emotional distress, and any other damages set forth herein and/or reasonably inferred from the allegations herein;

b)     Punitive damages;

c)     Attorneys' fees and costs, as expressly authorized in *N.J.S.A.* 10:6-2f, and as otherwise authorized by common law and/or statute; and

d)     Such other relief as the Court deems fair and just, including interest and costs of suit.

### **THIRD COUNT**
**(Negligent Hiring, Training, Supervision, Discipline,
Retention, and/or Enforcement of Policies)**

79.     Plaintiff Bernat incorporates by reference the preceding paragraphs.

80.     Defendants enacted policies and procedures that enabled Defendants to exercise control and/or authority over Plaintiff Bernat, with said control and/or authority resulting in the abuse of Plaintiff Bernat.

81.    Defendants failed to enact policies and procedures and/or failed to implement and/or enforce said policies and procedures, including but not limited to continuing training that could have and/or would have prevented the abuse.

82.    Defendants failed to adequately and/or reasonably monitor and/or supervise, thereby enabling conduct that resulted in the abuse of Plaintiff Bernat

83.    With full knowledge that Defendants would be vested with the authority and ability to place Plaintiff Bernat in a position that could result in abuse, Defendants failed to enact procedures, including adequate mental health evaluations to identify individuals such as Defendants who should not have been hired and/or retained.

84.    Upon coming into possession of facts that reasonably should have resulted in additional training, supervision, and/or training, Defendants improperly retained Defendants and/or failed to conduct additional training, supervision and/or training and further failed to timely discipline Defendants.

85.    Defendants employed a policy, procedure, custom, practice, and/or usage that, among other things, needlessly encouraged and/or enabled employees and/or agents to act with intentional and/or reckless indifference to the rights of persons under Defendants control, and/or created an environment in which there would be no fear of penalty for violating one's rights.

86.    In addition to directly violating the law, Defendants aided and abetted the other Defendants to violate the law and/or conspired for same.

87.    As a direct and proximate result of Defendants' failure to properly hire, train, supervise, discipline, and/or retain and/or because of Defendants' deliberate

indifference, Plaintiff Bernat suffered damages including but not limited to the deprivation of her Federal and State Constitutional rights and conscious pain and suffering.

WHEREFORE, Plaintiff Bernat respectfully seeks against Defendants individually, jointly and/or severally:

a)  Damages, including but not limited to pain and suffering, emotional distress, and any other damages set forth herein and/or reasonably inferred from the allegations herein;

b)  Punitive damages;

c)  Attorneys' fees and costs; and

d)  Such other relief as the Court deems fair and just, including interest and costs of suit.

## FOURTH COUNT
### (Assault and Battery)

88.  Plaintiff Bernat incorporates by reference the preceding paragraphs.

89.  Defendants illegally, intentionally, and/or negligently committed an assault and battery upon Plaintiff Bernat.

90.  Defendants unlawfully and intentionally touched and/or struck Plaintiff Bernat.

91.  Defendants engaged in conduct that constituted aggravated sexual assault, *N.J.S.A.* 2C:14-2a and *N.J.S.A.* 2C:14-2c, criminal sexual contact, *N.J.S.A.* 2C:14-3, lewdness, *N.J.S.A.* 2C:14-4, and/or assault, *N.J.S.A.* 2C:12-1.

92.     As a direct and proximate result, Plaintiff suffered damages including but not limited to conscious pain and suffering.

WHEREFORE, Plaintiff Bernat respectfully seeks against Defendants individually, jointly and/or severally:

a)     Damages, including but not limited to pain and suffering, emotional distress, and any other damages set forth herein and/or reasonably inferred from the allegations herein;

b)     Punitive damages;

c)     Such other relief as the Court deems fair and just, including interest and costs of suit.

## **FIFTH COUNT**
### **(Common Law Negligence)**

93.     Plaintiff Bernat incorporates by reference the preceding paragraphs.

94.     Defendants owed a duty of care to Plaintiff Bernat

95.     Defendants breached the duty of care owed to Plaintiff Bernat in a manner that caused her to experience pain and suffering.

96.     As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff Bernat respectfully seeks:

a)     Damages, including but not limited to pain and suffering, emotional distress, and any other damages set forth herein and/or reasonably inferred from the allegations herein; and

b)      Such other relief as the Court deems fair and just, including interest and costs of suit.

## SIXTH COUNT
### (Intentional and/or Negligent Infliction of Emotional Distress)

97.      Plaintiff Bernat incorporates by reference the preceding paragraphs.

98.      Defendants engaged in negligent, intentional, and/or reckless conduct.

99.      Defendants' conduct was extreme and outrageous beyond all bounds of decency and of such a nature, invasion, and duration to be so severe that no reasonable person could be expected to endure it without resultant harm.

100.    Defendants' conduct resulted in and/or is reasonably likely to hereafter result in severe emotional distress.

101.    As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff Bernat respectfully seeks:

a)      Damages, including but not limited to pain and suffering, emotional distress, and any other damages set forth herein and/or reasonably inferred from the allegations herein; and

b)      Punitive damages; and

c)      Such other relief as the Court deems fair and just, including interest and costs of suit.

## SEVENTH COUNT
### (Invasion of Privacy)

102.    Plaintiff Bernat incorporates by reference the preceding paragraphs.

103.    Defendants' conduct in notifying other inmates of Plaintiff Bernat's sexual encounters with prison guards not only placed Plaintiff Bernat in danger but also invaded her privacy.

104.    Defendants intentionally intruded upon the solitude or reclusion of Plaintiff's private affairs in a manner that was highly offensive and unreasonably intrusive.

105.    Defendants gave unreasonable publicity to Plaintiff's private life in a manner designed to embarrass Plaintiff, subject her to humiliation, and/or expose her to jailhouse retaliation.

106.    As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff Bernat respectfully seeks:

a)      Damages, including but not limited to pain and suffering, emotional distress, and any other damages set forth herein and/or reasonably inferred from the allegations herein; and

b)      Punitive damages; and

c)      Such other relief as the Court deems fair and just, including interest and costs of suit

## JURY DEMAND

Plaintiff demands a trial by a jury on all issues so triable.

## CERTIFICATION PURSUANT TO *L. CIV. R.* 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

PINILISHALPERN, LLP
Attorneys for Plaintiff


By: _s/Jeffrey S. Mandel_
        Jeffrey S. Mandel

Dated: *5-3-12*