**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

CHRISTINE BERNAT,

       Plaintiff,            CIVIL ACTION NUMBER:

       -vs-
                             3:12-cv-02649-MAS-LHG

STATE OF NEW JERSEY DEPARTMENT OF
CORRECTIONS, WILLIAM HAUCK,         MOTION/DECISION
individually as administrator of
the Edna Mahan Correction
Facility for Women, ERICK MELGAR,
JANETTE BENNETT, ALFRED E.
SMALLS, JEFFREY S. ELLIS, LANCE
K. JOHNSON, all individually and
in their capacity as a current
and/or former State Correctional
Officer, JOHN DOE 1-10, and JOHN
DOE ENTITY 1-10,

       Defendants.
_____

      Clarkson S. Fisher United States Courthouse
      402 East State Street
      Trenton, New Jersey 08608
      October 28, 2015

**B E F O R E**:    HONORABLE MICHAEL A. SHIPP
               UNITED STATES DISTRICT JUDGE

**A P P E A R A N C E S**:

CUTOLO MANDEL LLC
BY:  JASON N. SENA, ESQUIRE
Attorneys for the Plaintiff.

OFFICE OF ATTORNEY GENERAL
BY:  ROBERT P. PREUSS, ESQUIRE
Attorneys for the Defendants.

Certified as True and Correct as required by Title 28, U.S.C.,
Section 753
     /S/ Cathy J. Ford, CCR, CRR, RPR

─MOTION─

1          THE DEPUTY COURT CLERK:  All rise.

2          (Open court begins at 9:59 a.m.)

3          THE COURT:  Please be seated.  Good morning.

4          COUNSELS:  Good morning, your Honor.

5          THE COURT:  We are here today first, a number of

6    matters on this morning, in the matter of Christine Bernat

7    versus State of New Jersey, Department of Corrections, et al,

8    Docket Number 12-2649.

9          May I have appearances of counsel, please.

10         MR. SENA:  Good morning, your Honor.  Jason N. Sena,

11   S-E-N-A, appearing from Cutolo Mandel on behalf of the

12   plaintiff standing in for Mr. Mandel, who is sitting on a

13   continuing trial today.

14         THE COURT:  Thank you.

15         MR. PREUSS:  Deputy Attorney General Robert Preuss

16   appearing on behalf of Defendants Hauck, Ellis and Johnson.

17   Good morning, your Honor.

18         THE COURT:  Good morning to you as well.

19         So before the Court today is Defendants State of New

20   Jersey Department of Corrections, William Hauck, Jeffrey

21   Ellis, and Lance Johnson's motions for summary judgment.  With

22   respect to the moving Defendants, Plaintiff alleges that the

23   individual Defendants failed to protect her from the sexual

24   and physical abuse of Defendants Erick Melgar and Alfred

25   Small, who were officers at the facility where she was

1   incarcerated.  In addition, Plaintiff alleges that Defendant

2   Ellis threatened to keep her from disclosing the abuse and,

3   once she disclosed the abuse, Defendant Johnson retaliated

4   against her for this disclosure.  Based on these allegations,

5   Plaintiff brings claims for violations of federal and state

6   civil rights acts and for related state tort claims.  Moving

7   Defendants argue that Plaintiff has failed to show any

8   evidence to support these claims.

9        In particular, with respect to the individual

10  Defendants Hauck, Ellis and Johnson, Defendants argue that

11  Plaintiff cannot show that these Defendants knew about the

12  inappropriate conduct of Defendants Melgar and Smalls prior to

13  June 20, 2010, which was the date of Officer Melgar's last

14  sexual contact with Plaintiff.  Defendants argue that without

15  this knowledge Plaintiff cannot show that Defendants were

16  "deliberately indifferent" to Plaintiff's abuse, which is

17  required for her claims under the federal and New Jersey Civil

18  Rights Acts.  In addition, Defendants argue that without this

19  knowledge, Plaintiff's negligence claims fail because "an

20  employer will only be held responsible for the torts of its

21  employees beyond the scope of employment where it knew or had

22  reason to know of particular unfitness, incompetence or

23  dangerous attributes of the employee and could reasonably have

24  foreseen that such qualities created a risk of harm to other

25  persons." *Di Cosala v. Kay*, 91 N.J. 159, 173 (1982) (emphasis

─MOTION─

1    added).  In its opposition, Plaintiff argues that Defendant

2    Hauck had notice of Officer Hauck's conduct as early as

3    February 2008 but failed to take any action until June of

4    2010.  Accordingly, Plaintiff argues that Defendants'

5    knowledge as to the risk of Hauck's conduct is at least a

6    disputed issue of material fact and thus precludes summary

7    judgment.

8           So, gentlemen, have I framed your issue before the

9    Court properly and completely?

10          MR. SENA:  Yes, your Honor.

11          THE COURT:  With that, then, it's Defendant's motion.

12   Let me hear from you first, Mr. Preuss.

13          MR. PREUSS:  Judge, it's worthwhile to remember that

14   the issue here is deliberate indifference, basically.  And,

15   again, given the case law, basically, deliberate indifference

16   is more than simply a notice of a series of facts that might

17   give rise to an inference of danger, it actually requires that

18   the defendant take the inference from that fact and

19   nonetheless disregard it.  There is no evidence of that in

20   this case.  In fact, the only competent evidence that is on

21   this record having to do with how getting notice of what was

22   going on, was the June 24th report based on the June 23rd

23   comment Streater made to DeVita that, Oh, DeVita says that

24   Melgar is hugging up on her and he's taking her commissary

25   items.  And Hauck acts with breathtaking speed.

─ MOTION ─

1          The first thing he does is he orders an

2    investigation; that very same day he also moves Melgar out of

3    the unit and puts in a directive that Melgar is not to be on

4    the unit again.  Thereafter, there is an investigation, a very

5    comprehensive investigation that goes forward, and the inmates

6    don't cooperate with it.  If Hauck was really deliberatively

7    indifferent, he could easily have said, Well, they claim now

8    that nothing is happening, we're going to drop it.  But that's

9    not what he did, and that's not what the investigator did.

10   They continued to push.  And eventually they got all the

11   inmates coming out and saying, you know, this guy is doing all

12   these horrible things.  But there is at least one exception to

13   the inmates coming out and admitting to what was going on, and

14   that exception, of course, is the Plaintiff herself, who

15   continues to deny that anything happened.  She continues to

16   say, Oh, no, they're just concerned because they just don't

17   like him because he insists on enforcing the rules.  And this

18   goes on for several months.

19          In the mean time, the other inmates have now come

20   forward.  They are saying to Hauck and to Zdonowski, who is

21   the investigator, this guy is doing all these inappropriate

22   things, he's hitting people with rulers, he's throwing ice on

23   them, several of them say that there might be some kind of

24   sexual contact, somewhat di minimus sexual contact, not the

25   kind that the Plaintiff alleges, but sexual contact,

─ MOTION ─

1    nevertheless.

2         And as soon as the report is done and Hauck becomes

3    aware of it, he was on vacation when it first came out so

4    there was a five or six day hiatus, but as soon as the report

5    is done, he goes out and he starts termination proceedings

6    against Melgar.  In the mean time the Plaintiff herself has

7    still not made a complaint about Melgar.  She has still not

8    fessed up to the fact that Melgar is doing anything to her,

9    nor has she made any complaint about Smalls at this point.  By

10   the way, based on Smalls' testimony in his deposition --

11        THE COURT:  Didn't Smalls testify that it was common

12   knowledge that commanding officers at the facilities were

13   sexually involved with the inmates?

14        MR. PREUSS:  Smalls' testimony with regard to that

15   was totally dependent on his having heard rumors that certain

16   officers had been fired or had ceased to be there anymore;

17   that's hardly an indication of deliberate indifference.

18   That's an indication that when they got wind of this, they

19   took action and then he became aware of it.  Besides which,

20   his testimony with regard to that would be pure hearsay.  Who

21   actually said all these things?  He doesn't claim that anybody

22   said anything.  I don't think that's something he could

23   testify in a trial to because it would be clearly a conclusory

24   statement that's based on hearsay.  So, it seems to me that

25   that could be absolutely disregarded.

1            And, in any event, there is no testimony at all and
2    no evidence at all that Hauck was aware of this.  Smalls
3    doesn't say that Hauck was aware of it.  Hauck specifically
4    denies being aware of it.  Where's the evidence that Hauck was
5    aware of it even if there were rumors.  And as I said, the
6    rumors themselves would be hearsay.  And it appears from
7    Smalls' testimony at the deposition that that information came
8    from the fact that certain people ceased to be there because
9    they were going to be disciplined for it.
10           THE COURT:  Talk to me about Therese Afdahl's letter
11   and any information that may have been contained in that
12   letter and whether or not you believe that that's admissible
13   even?
14           MR. PREUSS:  No, I do not believe that that's
15   admissible.  First of all, it's totally unauthenticated.
16   Hauck denies -- Hauck obviously didn't see these letters until
17   years after the fact.  But when he got the letters, he said,
18   there were certain things that were done with inmate letters.
19   (1) was he would write a note on it; and (2) if that wasn't --
20   there was no note on it, there would be a stamp on it.  He
21   said, there was no note, no stamp on this letter.  As far as
22   he doesn't remember ever seeing it, he doesn't believe he did
23   see it.  There is no proof on the other side that he actually
24   did see it; that it was ever sent; that it was ever received
25   by Mr. Hauck.

─MOTION─

```
 1              In addition, I would just point out that the letter

 2     itself isn't even signed by Therese Afdahl.  We have no idea,

 3     based on this record, where that letter came from, none

 4     whatsoever.  You can't just bring in evidence --  I mean, if

 5     you were at trial, you'd have to authenticate that.  There

 6     would have to be some testimony that said, Yes, Hauck actually

 7     received this or at least that somebody sent this.  But

 8     there's nothing like that.  Nothing at all on the record that

 9     even suggests that.

10              In addition, when you look at that letter, you look

11     at the content of that letter, the content of that letter is

12     really, I don't believe in light of Hauck's immediate and

13     overwhelming response when he finally did learn about what was

14     going on with Melgar, I don't think it's enough to show that

15     he was deliberately indifferent or that he disregarded a known

16     risk.  The letter itself says very little more than, Well, I

17     made a complaint months ago, bear in mind that the letter

18     itself is not asking Hauck to do anything, which I guess would

19     suggest that whatever Afdahl had complained about, she

20     complained about to other officers and maybe had it stopped.

21     But she's not complaining about it then.  She's saying but I

22     think there might be retaliation going on because I made those

23     complaints.  And what is she complaining about?  He's hitting

24     people with rolled up newspapers, that's what she's

25     complaining about.  That's not sexual conduct, certainly.  I
```

─ MOTION ─

1  don't think anybody would say that that would give you notice

2  that he's sleeping with one of the inmates.  So it seems to

3  me -- and, in any event, again, the standard for deliberate

4  indifference is more than even that he gets -- he knows of

5  facts that result in an inference.  It's also did he take the

6  inference?  There is no evidence at all that Hauck himself

7  ever believed that, based on that letter, or anything else,

8  that Melgar constituted a danger to anybody on that unit until

9  June 23rd -- on June 24th of 2010 when he first got wind of

10  the allegations that Streater had made to DeVita and at that

11  point he takes immediate action.  Given that, it seems to me

12  one cannot draw an inference that he was indifferent based on

13  that probably he didn't know about it because there is no

14  evidence that he did know about it, but even if he did know

15  about it, clearly he must not have taken it seriously at that

16  point.  And I have to point out that under the law, at least

17  with regard to 1983, his subjective state of mind would be

18  important.  And in that case there is no -- absolutely no

19  evidence that he thought that anything was going on with

20  Melgar that he disregarded.

21      So, it seems to me, though, that that letter again

22  has to be disregarded, first, because it's inadmissible, it's

23  not an appropriate support for a summary judgment motion; and,

24  in addition, just because its allegations are so far removed

25  from what's going on.  Bear in mind, this letter is being sent

—MOTION—

1   on February 28th of 2008.  It talks about activities that

2   occurred months before that.  And Bernat doesn't even get to

3   the unit until December of 2009.  And then, of course, her

4   last time with Melgar is June 2010.  Again, I think it's

5   simply insufficient to create an issue of fact with regard to

6   that, at least, on the issue of deliberate indifference or,

7   for that matter, on negligence.

8       THE COURT:  Also, just for the record, I want to hear

9   your position on the qualified immunity arguments that you've

10  raised.

11      MR. PREUSS:  Well, I think with regard to Melgar, the

12  qualified immunity I think is very clear.  Melgar had no

13  reason to think -- even if you were to allow for the letter, I

14  don't think he would have had any reason to think that his not

15  taking immediate action on something is as diluted as that

16  would have been a denial of the constitutional rights.  And he

17  certainly, once he did get hard information, he did take

18  immediate action and nobody's even claiming that his immediate

19  action denied their rights.

20      With regard to Ellis and Johnson the case law is

21  fairly clear that merely vulgar comments, that kind of thing,

22  is not the basis for a 1983 action, nor would it be the basis

23  for any of the tort claims that were brought.  And for that

24  reason, it seems to me, there's no clear evidence whatsoever,

25  no clear case law whatsoever, that anything that Ellis or

—MOTION—

1   Johnson did, much less Hauck, would have violated a

2   constitutional right.

3        And for that reason I think that all three of them

4   would have been entitled to qualified immunity.

5        THE COURT:  Do you give any merit to any of the

6   factual allegations set forth by Plaintiff with regard to the

7   confiscation of personal belongings and alike that may have

8   risen to a constitutional violation?

9        MR. PREUSS:  No, Judge, because, bear in mind, we're

10  talking about a prison here, not a tea party.  We're talking

11  about a place where things are grabbed all the time.  I don't

12  think that there is any case law that says that the court has

13  to stand up as an appellate court with regard to the seizure

14  of things like potato chips and sewing kits.  There could be

15  lots of reasons for seizing such things, but I don't think

16  that amounts to a constitutional violation.

17       THE COURT:  Thank you, Mr. Preuss.

18       MR. PREUSS:  Thank you, your Honor.

19       THE COURT:  Counsel, let me hear from you in

20  opposition.

21       MR. SENA:  Thank you, your Honor.

22       Your Honor, in the Court's December 31st, 2013 order

23  issued an opinion that reads:  Officer Melgar's prior sexual

24  and physical misconduct with female inmates and his inaction,

25  meaning Hauck's inaction, upon said notice caused our client's

─MOTION─

1   sexual and physical abuse by Officer Melgar.

2          Your Honor, we have a certification from five

3   different inmates saying that Hauck was provided with notice

4   of sexual horseplay by Officer Melgar as early as 2008.  We're

5   entitled to every reasonable factual inference on this motion

6   for summary judgment.  I think based upon those five

7   certifications alone that clash directly with what Hauck says

8   happened.  And when he received notice, at minimum, we're

9   entitled to present that case to a jury.

10         As your Honor stated before, Corrections Officer

11  Smalls gave detailed testimony about how this facility was

12  essentially run sort of like a frat house where officers

13  regularly slept with inmates and that complaints that he made,

14  after coming from another facility with more strict policies,

15  were simply physically torn up or told that it would be dealt

16  with amongst the upper prison management.

17         We also have the letter that my adversary mentioned.

18  That letter on its face is sufficient to raise an issue of

19  disputed material fact as to whether Hauck received notice in

20  2008.  A jury can certainly determine whether or not the

21  letter was actually sent.  We can have Ms. Afdahl here to

22  testify regarding the letter.

23         THE COURT:  But, Counsel, isn't there a problem with

24  the letter?  With regard to the admissibility of the letter,

25  there is no authentication as to whether or not it -- it's not

─ MOTION ─

```
 1   signed, it's not stamped, it's not marked in the same way that

 2   other letters have been marked, why would that be admissible?

 3           MR. SENA:  We feel it would be admissible if Ms.

 4   Afdahl herself testified to that in court.  If it wasn't

 5   stamped, we submit, your Honor, that they could have simply

 6   elected not to stamp it.  Of course, they would stamp it

 7   "received" when they received the letter, if it was something

 8   that they were trying to sweep under the rug, maybe they would

 9   choose not to stamp it.

10           THE COURT:  They were sweeping it under the rug back

11   in 2008, prior to any knowledge that they need this in 2014

12   for a proposed motion for summary judgment?

13           MR. SENA:  We feel that it fits well within the

14   testimony of Officer Smalls who testified that the prison was

15   always run in that fashion.

16           THE COURT:  But Officer Smalls' testimony was not

17   quite as specific as you're indicating right now, was it?

18           MR. SENA:  That may be true, your Honor, but I think

19   the jury can weigh the import of the testimony as to Officer

20   Smalls.

21           THE COURT:  Okay.  Why don't you continue.

22           MR. SENA:  Sure.  If my adversary states that the --

23           THE COURT:  Other than the letter from Ms. Afdahl and

24   the testimony that you're pointing to from Officer Smalls, is

25   there any other evidence as to Defendant's knowledge of the
```

1    abuse before June 2010?

2        MR. SENA:  I believe the five certifications from the

3    five different inmates that he was put on notice in 2008 are

4    themselves sufficient to create a disputed fact.  They certify

5    that he received notice.  He says he didn't receive notice.

6    If there were questions as to exactly what type of notice was

7    provided, there could have been discovery conducted on that

8    issue.  I didn't see any of that discovery conducted in the

9    file.

10        We feel the certifications from the inmates, the

11   letter, although they're questions your Honor raised in the

12   testimony of Officer Smalls, when viewed most favorably to Ms.

13   Bernat, certainly create disputed facts and a reasonable juror

14   could certainly find in her favor after hearing that

15   testimony.

16        As to whether Defendant Hauck acted with a deliberate

17   indifference; state of mind is an issue that is very rarely

18   decided on summary judgment, as the case law provides.

19        As I stated, the conduct of the guards and the upper

20   prison management in this facility was -- is known to be,

21   let's say, untraditional.  Hauck denied knowing that he had

22   written notice; five inmates say that he did.  Whether or not

23   he knew is a factual determination that a jury should make

24   that I don't think we could make on summary judgment, based

25   upon the facts that we have before this Court today, and based

─MOTION─

1    upon this record.

2         We have testimony from Officer Smalls in that regard

3    stating that Defendant Hauck actually befriended certain

4    inmates and was posing for pictures with inmates with his arm

5    around him congratulating him for certain accomplishments.

6    That in itself is a direct contradiction of the state's own

7    policy with regard to familiarity with prison inmates.  If we

8    have testimony from an officer saying that the prison

9    administrator was doing that, we have testimony from the same

10   officer saying that sleeping with inmates is a widespread

11   thing that guards did, and we know that it happened in this

12   case, then, I think, that a reasonable juror could at least

13   conclude that Defendant Hauck had notice of everything that

14   was going on right under his nose.  Everybody else knew about

15   it.

16         In fact, Corrections Officer --

17         THE COURT:  But aren't we required to have actual

18   knowledge here not "should have known."

19         MR. SENA:  That's correct, your Honor.  I'm sorry if

20   I misspoke.  I think a reasonable juror could --

21         THE COURT:  I mean, we can't argue that everybody

22   else knew and it was going on under his nose and, therefore,

23   he should have known.

24         MR. SENA:  But I think based upon this evidence, upon

25   this record, a juror could conclude that he actually knew.  We

1   have a letter addressed to him from an inmate.

2           THE COURT:  The letter from Ms. Afdahl.

3           MR. SENA:  Yes.

4           THE COURT:  I'm going to be very frank with you,

5   Counsel, I don't know if that letter is admissible.  It's not

6   authenticated.  And you've not done anything to authenticate

7   it.  And so that letter in and of itself is not going to cut

8   it.  So, aside from that, how do you get to actual knowledge?

9           MR. SENA:  We have the five certifications from the

10  inmates, your Honor.

11          THE COURT:  Okay.  And I'm going to take another look

12  at those.

13          But what are you alleging that those five

14  certifications show?

15          MR. SENA:  They state that he was provided with

16  notice in 2008.

17          THE COURT:  Okay.

18          MR. SENA:  And I think on those five certifications

19  alone, I think that --

20          THE COURT:  Nivi, can I get those five

21  certifications.  Okay, you can continue while she's getting

22  them.

23          MR. SENA:  Sure.  I believe it's Exhibit F to our

24  opposition, attached to the back of the pleading.

25          I think those five certifications alone, your Honor,

─MOTION─

1   provide sufficient disputed fact that a jury needs to decide,

2   whether or not those certifications -- I mean, that notice in

3   2008 constitutes deliberate indifference based upon his

4   reaction not instituting an investigation until 2010, which,

5   by the way, this whole incident was brought up by a prison

6   psychologist at a meeting of upper management, that's the

7   first time that he ever took action when it came out in

8   public.  I think that based upon all the evidence that we've

9   cited in our opposition, a jury certainly can find in our

10  favor and people go to jail based upon circumstantial

11  evidence.  We feel that the totality of the evidence in this

12  case certainly shows enough circumstantial evidence that Hauck

13  knew what was going on and chose to ignore it until it came up

14  in public years later.

15         We feel that the same argument holds true to the

16  counts of negligence.  They had a statutory duty to ensure

17  that Ms. Bernat was safe from harm.

18         And if you, excuse me, your Honor, I apologize, I'm

19  going through my notes, this is my first time appearing on the

20  case.  If I pause slightly, I apologize.

21         THE COURT:  You're doing a great job, Counsel.  Thank

22  you.

23         MR. SENA:  Thank you.

24         There is no dispute that the State Defendants had a

25  statutory duty to ensure that Ms. Bernat was safe from harm.

─MOTION─

 1  We know that that didn't happen and we feel that there is

 2  serious factual issues that a jury needs to decide as to

 3  whether Hauck was on notice.

 4          And Ellis and Johnson who, by the way, they were

 5  shift supervisors; they were sergeants.  They worked above

 6  Melgar.  We have direct evidence that they were on notice

 7  because they told our client that they knew about it.  And

 8  whether or not that would constitute negligence, I believe, is

 9  an issue that the jury should decide.

10          As to the issue of qualified immunity that your Honor

11  raised, I believe that the standard is that Defendant Hauck

12  knew, or should have known, about this incident in order to

13  obtain qualified immunity.  That too is a fact issue for the

14  same reasons I just stated.

15          THE COURT:  How do these five certifications show

16  anything?

17          MR. SENA:  They incorporate, by reference, the

18  pleading filed by Therese Afdahl in a separate action by

19  certifying that the allegations in that complaint are true and

20  accurate.  It's a verified complaint as well.  They

21  incorporate in reference all the allegations in that

22  complaint.

23          THE COURT:  Go ahead.

24          MR. SENA:  At minimum, your Honor, all of the

25  evidence that we've cited, certifications that your Honor just

———MOTION———

1    read, the letter, the testimony of Officer Smalls, it all goes

2    to the credibility of Mr. Hauck and it all can be used at

3    trial to impeach Mr. Hauck.  He, in his own deposition,

4    deviated at least once about when he found out about the

5    sexual assault against Ms. Bernat.  He first stated that it

6    was during the investigation, and then he stated it was at the

7    deposition.  There's credibility issues --

8            THE COURT:  At the deposition?  Oh, yeah, that's

9    right.  He did say that was the first time he heard it.  Okay.

10   Go ahead.

11           MR. SENA:  There's credibility issues there that need

12   to be determined by a jury, especially in light of the

13   evidence that we've presented.  And the evidence that we've

14   presented can come in at trial for purposes of credibility, it

15   can come in for purposes of impeachment.

16           We feel that based upon the totality of the

17   circumstances in this case, the allegations in the pleadings

18   have been supported by discovery that we've obtained and which

19   may still have been shielded from us based upon the fact that

20   we found out that Officer Melgar has an entire file on this

21   case that wasn't produced in discovery.  I think that your

22   Honor can draw an adverse inference certainly based upon the

23   information that may or may not be contained in the file.  Who

24   knows, maybe the letter is in the file.  We don't know because

25   it hasn't been produced.  But based upon that alone, I think

—MOTION—

 1   your Honor can at least draw an adverse inference and deny

 2   this motion for summary judgment.  And additionally, based

 3   upon the facts that we've produced in discovery and how they

 4   fit within the pleadings created a sufficient disputed

 5   material fact that we think that it should be presented to a

 6   jury.  Thank you, your Honor.

 7        THE COURT:  Thank you, Counsel.

 8        Mr. Preuss, a very short reply.  I'd like you to

 9   address a few things for me.  First of all, counsel has

10   indicated these five certifications incorporate, by reference,

11   some kind of support in a separate action that was filed

12   Afdahl v. Melgar.  It's a state court matter in Hunterdon

13   County.  Can you address that for me?

14        MR. PREUSS:  Yes, Judge.  There is only one

15   allegation in that entire complaint that would be relevant to

16   this.  And it says, I believe it was Paragraph 105 of the

17   complaint, which, it says, I quote, Defendant Hauck was

18   personally informed by Plaintiff Afdahl and/or others about

19   the abusive behavior of Defendant Melgar as early as 2008 yet

20   did nothing to prevent it, nor did he report it to his

21   superior.  That's a conclusory statement.  It's not even an

22   unequivocal statement, because it says, "and/or others."  It

23   doesn't even say who reported it.  It doesn't say how it was

24   reported.  It doesn't tell us anything about it.  I think you

25   need a little bit more to establish his knowledge about

─MOTION─

1  anything than certifications attached to a complaint that

2  don't even directly say that.  And in particular, how would

3  you evaluate whether or not Hauck would have known?  It would

4  appear that they're talking about -- well, I don't know what

5  they're talking about.  We don't know what the basis for that

6  allegation is.  We don't know the substance of it.  It's

7  something I don't think somebody could testify to in front of

8  a jury.  You couldn't say, Well, he was informed either by

9  Afdahl or others, you couldn't say that, because that would be

10  inappropriate.  So, it seems to me that we can disregard that,

11  along with the other things.

12          THE COURT:  Go ahead.

13          MR. PREUSS:  The other thing I wanted to raise, there

14  was a point raised about Mr. Hauck not knowing about the

15  sexual misconduct.  I have to point out, Bernat didn't admit

16  to the sexual misconduct until Hauck had already read the

17  initial report and then fired Melgar.  From his point of view,

18  at that point, it would have been irrelevant.  Later on there

19  was a supplemental report that included the sexual conduct

20  which then became the basis for terminating Smalls, but the

21  termination of Melgar was based on the allegations by other

22  inmates, not by Ms. Bernat.  And I guess that's all I have to

23  say.  Thank you.

24          THE COURT:  Thank you very much, Counsel.

25          Counsel, I am going to have to take a brief recess

─MOTION─

```
 1   and take a quick look at a few items before I could rule.

 2          I do intend on making a ruling on this matter so I'm

 3   going to ask you folks to sit tight while I hear the next case

 4   and then I'm going to take a short recess and I'll come back

 5   with a ruling on your case.

 6          MR. PREUSS:  Thank you, your Honor.

 7          MR. SENA:  Your Honor, can I be heard very, very

 8   briefly on one point, on only one point.

 9          THE COURT:  Only on one point, Counsel.  This is

10   Defendant's motion, they usually get the last word on reply.

11          MR. SENA:  Just one point only, I promise it's going

12   to be very brief.

13          THE COURT:  Okay, Counsel, go ahead.

14          MR. SENA:  It's actually the certifications.  I

15   recognize that we are arguing here before your Honor and that

16   we can spin facts to support our case.

17          The certifications by the inmates are sworn

18   statements based upon a verified complaint.  I recognize that

19   counsel can make arguments based upon the facts and how a jury

20   would interpret it, I think that's left to the jury.  That's

21   the only point that I wanted to make.

22          THE COURT:  Thank you.

23          MR. PREUSS:  Thank you, your Honor.

24          (Recess is taken.)

25          THE COURT:  At this time, I'd like to see the counsel
```

─ MOTION ─

1    for the Bernat matter back at counsel table, please.

2         We're back on the record in the Bernat versus State

3    of New Jersey, Department of Corrections, *et al.* Docket Number

4    12-2649 matter.  I'm prepared to put my decision on the

5    record.  I'm not going to read citations on the record, the

6    citations will be included in the transcript if you so choose

7    to order one.

8         Presently before the Court is Defendants State of New

9    Jersey, Department of Corrections, Edna Mahan Correctional

10   Facility for Women, William Hauck, Jeffrey S. Ellis, and Lance

11   K. Johnson's Motion for Summary Judgment.  Summary judgment is

12   appropriate where the Court is satisfied that "there is no

13   genuine issue as to any material fact and that the movant is

14   entitled to a judgment as a matter of law."  Fed. R. Civ. P.

15   56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

16   A factual dispute is genuine only if there is "a sufficient

17   evidentiary basis on which a reasonable jury could find for

18   the nonmoving party," and it is material only if it has the

19   ability to "affect the outcome of the suit under governing

20   law."  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d

21   Cir.2006); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S.

22   242, 248 (1986).  Disputes over irrelevant or unnecessary

23   facts will not preclude a grant of summary judgment.

24   *Anderson*, 477 U.S. at 248.  "In considering a motion for

25   summary judgment, a district court may not make credibility

1  determinations or engage in any weighing of the evidence;

2  instead, the non-moving party's evidence is to be believed and

3  all justifiable inferences are to be drawn in his favor."

4  *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d

5  Cir.2013) (quoting *Marino v. Indus. Crating Co.*, 358 F.3d 241,

6  247 (3d Cir.2004)); *Anderson*, 477 U.S. at 255; *see also*

7  *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S.

8  574, 587 (1986); *Curley v. Klem,* 298 F.3d 271, 276-77 (3d Cir.

9  2002).  In deciding the merits of a party's motion for summary

10 judgment, the court's role is not to evaluate the evidence and

11 decide the truth of the matter but to determine whether there

12 is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.

13 There can be "no genuine issue as to any material fact,"

14 however, if a party fails "to make a showing sufficient to

15 establish the existence of an element essential to that

16 party's case, and on which that party will bear the burden of

17 proof at trial."  *Celotex*, 477 U.S. at 322-23.  "[A] complete

18 failure of proof concerning an essential element of the

19 nonmoving party's case necessarily renders all other facts

20 immaterial."  *Id.* at 323; *Brightwell v. Lehman*, 637 F.3d 187,

21 194 (3d Cir. 2011).  To establish a § 1983 claim, a plaintiff

22 must "demonstrate a violation of a right protected by the

23 Constitution or laws of the United States that was committed

24 by a person acting under the color of state law."  *Nicini v.*

25 *Morra*, 212 F.3d 798, 806 (3d Cir. 2000).  In the context of a

1   claim against a prison official, this requires showing that:

2   (1) Plaintiff was deprived of a constitutional right that was

3   sufficiently serious; and (2) the prison official was

4   deliberately indifferent to the risk of this deprivation.

5        Additionally, the prison official must have "personal

6   involvement in the alleged wrongs." *Rode v. Dellarciprete*,

7   845 F.2d 1195, 1207 (3d Cir. 1988).

8        Here, Plaintiff alleges that Hauck violated § 1983 by

9   failing to protect her from the abuse of Officers Melgar and

10  Smalls.  This claim fails because Plaintiff has not made a

11  sufficient showing of deliberate indifference.  To show the

12  "deliberate indifference" necessary to sustain a prisoner's

13  Eighth Amendment claim against a prison official, Plaintiff

14  must show that an official "knows of and disregards an

15  excessive risk to inmate health or safety." *Farmer v.*

16  *Brennan*, 511 U.S. 825, 837 (1994).  This knowledge requirement

17  is subjective, not objective knowledge, "meaning that the

18  official must actually be aware of the existence of the

19  excessive risk; it is not sufficient that the official should

20  have been aware." *Beers-Capital v. Whetzel*, 256 F. 3d 120,

21  133 (3d Cir. 2001).

22       Here, Plaintiff alleges that Defendant Hauck received

23  information regarding Defendant Melgar's inappropriate conduct

24  as early as February 28, 2008 but failed to take any steps to

25  protect Plaintiff against such conduct until June of 2010.

—MOTION—

1  Opp'n Br. 21, ECF No. 94.  In support of this contention,

2  Plaintiff relies on a four-page letter that is addressed to

3  Hauck and appears to have been written by Therese Afdhal,

4  another inmate at the Edna Mahan Correctional Facility. *Id.*

5  Plaintiff has not submitted an affidavit or any other

6  statement from Afdahl to confirm that she was, in fact, the

7  author of this letter or that she actually sent the letter to

8  Hauck.  In his deposition, Hauck testified that he did not

9  remember seeing the letter prior to his deposition.  In

10  addition, the letter does not contain any marks acknowledging

11  receipt, despite the fact that other correspondence that Hauck

12  received from Afdhal did contain such marks.  Given

13  Plaintiff's failure to authenticate the letter, the letter is

14  not admissible.  Moreover, even assuming it is admissible, the

15  Court finds that its content was not sufficient to put Hauck

16  on notice as to the risk of Officer Melgar's sexual abuse.  In

17  particular, the letter references, as an aside, instances of

18  non-sexual "playing," which although inappropriate is a far

19  cry from Melgar's sexual abuse, and thus did not put Hauck on

20  notice as to the risk of this behavior.

21      In addition, to this letter Plaintiff also cites the

22  certifications of inmates Michelle Ellis, Tasha Canada,

23  Barbara Clark, Robin Streater, and Therese Afdahl in support

24  of her contention that Defendant Hauck had knowledge of the

25  risk of Officer Melgar's abuse as early as 2008.  These

─MOTION─

1  certifications certify as to the truth of the allegations in

2  the Second Amended Complaint in a separate action against

3  Officer Melgar, captioned *Afdahl, et al, v. Melgar, et al.,*

4  Docket Number HUN-L-464-07.  This complaint alleges that

5  "Defendant Hauck was personally informed by Plaintiff AFDAHL

6  and/or others about the abusive behavior of Defendant MELGAR

7  as early as 2008, yet did nothing to prevent it, nor did he

8  report it to his superiors."  This allegation, which vaguely

9  refers to "Afdahl and/or others" and "abusive behaviors" is

10  not a sufficient evidentiary basis on which a reasonable juror

11  could find that Hauck was given notice of Defendant Melgar's

12  sexual abuse of other inmates prior to June of 2010.

13  Moreover, the Complaint indicates that, out of fear of

14  retaliation, inmate Robin Streater did not disclose Melgar's

15  sexual abuse prior to 2010.  Accordingly, these certifications

16  are not sufficient to defeat Defendants' motion for summary

17  judgment as to the § 1983 claim against Hauck.

18      In contrast to Plaintiff's § 1983 claim against Hauck,

19  Plaintiff's § 1983 claims against Defendants Johnson and Ellis

20  is not based on Defendants' failure to protect her from

21  Officer Melgar and Smalls' abuse, but rather on their own

22  conduct.  Specifically, Plaintiff alleges that Defendant

23  Johnson verbally abused her and Defendant Ellis verbally

24  threatened her to keep her from disclosing Officer Melgar's

25  abuse.  These allegations of verbal harassment, however, do

─MOTION─

1  not give rise to a constitutional violation enforceable under

2  § 1983. *Prisoners' Legal Assoc. v. Roberson*, 822 F. Supp.

3  185, 189 (D.N.J. 1993). Plaintiff also alleges that Defendant

4  Johnson confiscated items that she purchased from the prison

5  commissary, i.e., a bag of chips and a sewing kit. Defs.' SOF

6  Ex. D at 112:11-113:6, ECF No. 86-5. These allegations do not

7  rise to the level of "calculated harassment," and thus are

8  also insufficient to support a claim under § 1983. *Prisoners'*

9  *Legal Assoc.*, 822 F. Supp. at 189.

10       Accordingly, Plaintiff's claims for violations of the

11  Federal and State Civil Rights Acts against Defendants Hauck,

12  Ellis and Johnson fail as a matter of law. *Chapman v. New*

13  *Jersey,* No. 08-4130, 2009 WL 263888, at *7 (D.N.J. Aug. 25,

14  2009) ("Courts have repeatedly construed NJCRA in terms nearly

15  identical to its federal counterpart.").

16       Next, as to Counts Three and Five: Negligent hiring and

17  negligence.

18       With respect to Plaintiff's negligence claims, as

19  Plaintiff has not shown that either Defendant Ellis or Johnson

20  had any supervisory responsibilities, Plaintiff has not shown

21  that these Defendants had either a duty or power to prevent

22  Officers Melgar and Smalls' conduct. Accordingly, Plaintiff's

23  negligence claims against these Defendants fail.

24       In addition, with respect to Defendant Hauck,

25  Plaintiff's negligence claims fail because Plaintiff has not

—MOTION—

offered any admissible evidence to show that Hauck knew of

Officer Melgar and Smalls' conduct prior to June 2010.  Both

claims of negligence hiring and negligence requires showing

knowledge of the risk of harm.  *Di Cosala v. Kay*, 91 N.J. 159,

173 (1982) ("[A]n employer will only be held responsible for

the torts of its employees beyond the scope of employment

where it knew or had reason to know of the particular

unfitness, incompetence or dangerous attributes of the

employee and could reasonably have foreseen that such

qualities created a risk of harm to other persons."); *Carter*

*Lincoln-Mercury v. EMAR Grp.*, 135 N.J. 182, 194(1994)

("Ability to foresee injury to a potential plaintiff . . . is

a crucial element in determining whether imposition of a duty

on an alleged tortfeasor is appropriate.") (internal citation

omitted).

        As to Counts Four, Six and Seven: State Law Intentional

Torts.

        As an initial matter, in its previous decision this

Court dismissed Counts Four, Six, and Seven with prejudice as

against Defendant Hauck because Plaintiff had not made "any

specific allegations against Hauck for sexually or physically

abusing Plaintiff."  *Bernat v. State of NJ Dept. of*

*Corrections*, No. 12-2669 (Dec. 31, 2013).  Thus, now finding

that the Complaint does not allege that either Defendant Ellis

or Johnson sexually or physically abused the Plaintiff, the

—MOTION—

1   Court dismisses Counts Four, Six, and Seven with prejudice as

2   against Defendants Ellis and Johnson.  Furthermore, pursuant

3   to N.J.S.A. 59:2-10, which insulates public entities from

4   liability for intentional wrongdoing of their employees, these

5   claims are also dismissed with respect to the State of New

6   Jersey, Department of Corrections.

7        The Court will issue an Order consistent with this

8   decision later on today.  And with that, that's all that we

9   have for this matter.  Thank you very much, Counsels.

10           MR. PREUSS:  Thank you, your Honor.

11           THE DEPUTY COURT CLERK:  All rise.

12           (Court concludes at 11:48 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

| / |
|---|

**/S** [1] - 1:25

| 0 |
|---|

**08-4130** [1] - 28:12
**08608** [1] - 1:15

| 1 |
|---|

**1** [2] - 7:18, 25:1
**1-10** [2] - 1:12, 1:12
**105** [1] - 20:15
**112:11-113:6** [1] - 28:5
**1195** [1] - 25:6
**11:48** [1] - 30:11
**12-2649** [2] - 2:8, 23:3
**12-2669** [1] - 29:22
**120** [1] - 25:19
**1207** [1] - 25:6
**133** [1] - 25:20
**135** [1] - 29:10
**159** [2] - 3:25, 29:3
**173** [2] - 3:25, 29:4
**181** [1] - 24:3
**182** [1] - 29:10
**185** [1] - 28:2
**187** [1] - 24:19
**189** [2] - 28:2, 28:8
**191** [1] - 24:3
**194** [1] - 24:20
**194(1994** [1] - 29:10
**1982** [2] - 3:25, 29:4
**1983** [9] - 9:16, 10:21, 24:20, 25:7, 27:16, 27:17, 27:18, 28:1, 28:7
**1986** [1] - 24:7
**1986)** [2] - 23:14, 23:21
**1988)** [1] - 25:6
**1993)** [1] - 28:2
**1994)** [1] - 25:15

| 2 |
|---|

**2** [2] - 7:18, 25:2
**20** [1] - 3:13
**2000)** [1] - 24:24
**2001)** [1] - 25:20
**2002)** [1] - 24:8
**2008** [12] - 4:3, 9:25, 12:3, 12:19, 13:10, 14:2, 16:16, 17:3, 20:18, 25:23, 26:24, 27:6
**2009** [3] - 10:2, 28:12, 28:13
**2010** [10] - 3:13, 4:4, 9:8, 10:3, 13:25, 17:4, 25:24, 27:11, 27:14, 29:1
**2011)** [1] - 24:20
**2013** [1] - 11:21

**2013)** [1] - 29:22
**2014** [1] - 13:10
**2015** [1] - 1:16
**21** [1] - 25:25
**212** [1] - 24:24
**23rd** [2] - 4:22, 9:8
**241** [1] - 24:4
**242** [1] - 23:21
**247** [1] - 24:5
**248** [2] - 23:21, 23:23
**249** [1] - 24:11
**24th** [2] - 4:22, 9:8
**25** [1] - 28:12
**255** [1] - 24:5
**256** [1] - 25:19
**263888** [1] - 28:12
**271** [1] - 24:7
**276-77** [1] - 24:7
**28** [3] - 1:16, 1:24, 25:23
**28th** [1] - 9:25
**298** [1] - 24:7

| 3 |
|---|

**31** [1] - 29:22
**317** [1] - 23:14
**31st** [1] - 11:21
**322-23** [1] - 24:16
**323** [2] - 23:14, 24:19
**358** [1] - 24:4
**3:12-cv-02649-MAS-LHG** [1] - 1:6
**3d** [9] - 23:19, 24:3, 24:5, 24:7, 24:20, 24:24, 25:6, 25:19, 25:20

| 4 |
|---|

**402** [1] - 1:15
**418** [1] - 23:19
**423** [1] - 23:19
**455** [1] - 23:19
**475** [1] - 24:6
**477** [6] - 23:14, 23:20, 23:23, 24:5, 24:11, 24:16

| 5 |
|---|

**511** [1] - 25:15
**56(c** [1] - 23:14
**574** [1] - 24:7
**587** [1] - 24:7
**59:2-10** [1] - 30:2

| 6 |
|---|

**637** [1] - 24:19

| 7 |
|---|

**7** [1] - 28:12
**709** [1] - 24:3
**753** [1] - 1:24
**798** [1] - 24:24

| 8 |
|---|

**806** [1] - 24:24
**822** [2] - 28:1, 28:8
**825** [1] - 25:15
**837** [1] - 25:15
**845** [1] - 25:6
**86-5** [1] - 28:5

| 9 |
|---|

**91** [2] - 3:25, 29:3
**94** [1] - 25:25
**9:59** [1] - 2:2

| A |
|---|

**a.m** [2] - 2:2, 30:11
**ability** [1] - 23:18
**absolutely** [2] - 6:24, 9:17
**abuse** [14] - 2:24, 3:2, 3:3, 3:16, 11:25, 13:25, 25:8, 26:15, 26:18, 26:24, 27:11, 27:14, 27:20, 27:24
**abused** [2] - 27:22, 29:24
**abusing** [1] - 29:21
**abusive** [2] - 20:18, 27:5
**accomplishments** [1] - 15:4
**accordingly** [1] - 4:4
**Accordingly** [3] - 27:14, 28:9, 28:21
**accurate** [1] - 18:20
**acknowledging** [1] - 26:9
**acted** [1] - 14:15
**acting** [1] - 24:23
**ACTION** [1] - 1:5
**action** [11] - 4:3, 6:18, 9:10, 10:14, 10:17, 10:18, 10:21, 17:7, 18:18, 20:10, 27:1
**activities** [1] - 9:25
**acts** [2] - 3:6, 4:24
**Acts** [2] - 3:18, 28:10
**actual** [2] - 15:16, 16:8
**added** [1] - 4:1
**addition** [6] - 3:1, 3:18, 7:25, 8:9, 9:23, 26:9, 26:20, 28:23
**additionally** [1] - 20:1
**Additionally** [1] - 25:4
**address** [2] - 20:8, 20:12
**addressed** [2] - 15:25, 26:1
**administrator** [2] - 1:8, 15:8
**admissibility** [1] - 12:23

**admissible** [8] - 7:11, 7:14, 13:1, 13:2, 16:5, 26:13, 28:25
**admit** [1] - 21:14
**admitting** [1] - 5:12
**adversary** [2] - 12:16, 13:21
**adverse** [2] - 19:21, 19:25
**AFDAHL** [1] - 27:4
**Afdahl** [13] - 8:1, 8:18, 12:20, 13:3, 13:22, 16:1, 18:18, 20:11, 20:17, 21:8, 26:5, 26:22, 27:2
**Afdahl's** [1] - 7:9
**Afdhal** [2] - 26:2, 26:11
**affidavit** [1] - 26:4
**ago** [1] - 8:16
**ahead** [4] - 18:22, 19:9, 21:11, 22:12
**al** [4] - 2:7, 23:2, 27:2
**Alfred** [1] - 2:24
**ALFRED** [1] - 1:9
**alike** [1] - 11:6
**allegation** [3] - 20:14, 21:5, 27:7
**allegations** [12] - 3:4, 9:9, 9:23, 11:5, 18:19, 18:21, 19:16, 21:20, 26:25, 27:24, 28:5, 29:20
**allege** [1] - 29:23
**alleged** [2] - 25:5, 29:13
**alleges** [8] - 2:22, 3:1, 5:24, 25:7, 25:21, 27:3, 27:21, 28:2
**alleging** [1] - 16:13
**allow** [1] - 10:12
**alone** [4] - 12:6, 16:19, 16:25, 19:24
**Amended** [1] - 27:1
**Amendment** [1] - 25:12
**amounts** [1] - 11:15
**Anderson** [4] - 23:20, 23:23, 24:5, 24:11
**apologize** [2] - 17:18, 17:20
**appear** [1] - 21:3
**appearances** [1] - 2:9
**appearing** [3] - 2:11, 2:16, 17:19
**appellate** [1] - 11:12
**appropriate** [2] - 9:22, 23:11
**appropriate."** [1] - 29:13
**argue** [5] - 3:7, 3:10, 3:14, 3:18, 15:20
**argues** [2] - 4:1, 4:4
**arguing** [1] - 22:14
**argument** [1] - 17:15
**arguments** [2] - 10:8, 22:18
**arm** [1] - 15:3
**aside** [2] - 16:7, 26:16
**assault** [1] - 19:4

**Assoc** [2] - 28:1, 28:8
**assuming** [1] - 26:13
**attached** [2] - 16:24, 20:25
**Attorney** [1] - 2:15
**ATTORNEY** [1] - 1:21
**Attorneys** [2] - 1:20, 1:22
**attributes** [2] - 3:23, 29:7
**Aug** [1] - 28:12
**authenticate** [3] - 8:4, 16:6, 26:12
**authenticated** [1] - 16:5
**authentication** [1] - 12:24
**author** [1] - 26:6
**aware** [7] - 6:1, 6:18, 7:1, 7:2, 7:3, 7:4, 25:17
**aware."** [1] - 25:19

### B

**bag** [1] - 28:4
**Barbara** [1] - 26:22
**based** [23] - 3:4, 4:22, 6:8, 6:23, 8:2, 9:6, 9:11, 12:5, 14:23, 14:24, 15:23, 17:3, 17:8, 17:10, 19:15, 19:18, 19:21, 19:24, 20:1, 21:20, 22:17, 22:18, 27:19
**basis** [6] - 10:21, 21:4, 21:19, 23:16, 27:9
**bear** [4] - 8:16, 9:24, 11:8, 24:15
**became** [2] - 6:18, 21:19
**becomes** [1] - 6:1
**Beers** [1] - 25:19
**Beers-Capital** [1] - 25:19
**befriended** [1] - 15:2
**begins** [1] - 2:2
**behalf** [2] - 2:16, 21:16
**behavior** [3] - 20:18, 26:19, 27:5
**behaviors"** [1] - 27:8
**belongings** [1] - 11:6
**BENNETT** [1] - 1:9
**Bernat** [11] - 2:6, 10:1, 14:12, 17:17, 17:25, 19:4, 21:14, 21:21, 22:25, 23:1, 29:21
**BERNAT** [1] - 1:4
**beyond** [2] - 3:21, 29:5
**bit** [1] - 20:24
**Br** [1] - 25:25
**breathtaking** [1] - 4:25
**Brennan** [1] - 25:15
**brief** [2] - 21:24, 22:11
**briefly** [1] - 22:7
**Brightwell** [1] - 24:19
**bring** [1] - 8:3
**brings** [1] - 3:5
**brought** [2] - 10:22, 17:5
**Bucks** [1] - 23:19

**burden** [1] - 24:15
**BY** [2] - 1:20, 1:22

### C

**Canada** [1] - 26:21
**cannot** [3] - 3:11, 3:15, 9:11
**capacity** [1] - 1:11
**Capital** [1] - 25:19
**captioned** [1] - 27:2
**Carter** [1] - 29:9
**case** [18] - 4:15, 4:19, 9:17, 10:19, 10:24, 11:11, 12:8, 14:17, 15:11, 17:12, 17:20, 19:16, 19:20, 22:2, 22:4, 22:15, 24:15, 24:18
**Cathy** [1] - 1:25
**Catrett** [1] - 23:14
**caused** [1] - 11:24
**CCR** [1] - 1:25
**ceased** [2] - 6:15, 7:7
**Celotex** [2] - 23:14, 24:16
**certain** [5] - 6:14, 7:7, 7:17, 15:2, 15:4
**certainly** [8] - 8:24, 10:16, 12:19, 14:12, 14:13, 17:9, 17:12, 19:21
**certification** [1] - 12:1
**certifications** [12] - 12:6, 14:1, 14:9, 16:9, 16:14, 16:18, 16:21, 16:25, 17:2, 18:15, 18:24, 20:9, 20:25, 22:13, 22:16, 26:21, 26:25, 27:14
**Certified** [1] - 1:24
**certify** [2] - 14:3, 26:25
**certifying** [1] - 18:19
**Chapman** [1] - 28:11
**chips** [2] - 11:13, 28:4
**choose** [2] - 13:8, 23:5
**chose** [1] - 17:13
**CHRISTINE** [1] - 1:4
**Christine** [1] - 2:6
**Cir** [5] - 24:7, 24:20, 24:24, 25:6, 25:20
**Cir.2004** [1] - 24:5
**Cir.2006** [1] - 23:20
**Cir.2013** [1] - 24:4
**circumstances** [1] - 19:16
**circumstantial** [2] - 17:10, 17:12
**citation** [1] - 29:13
**citations** [2] - 23:4, 23:5
**cited** [2] - 17:9, 18:24
**cites** [1] - 26:20
**City** [2] - 24:3
**Civ** [1] - 23:13
**Civil** [2] - 3:17, 28:10
**civil** [1] - 3:6
**CIVIL** [1] - 1:5

**claim** [9] - 5:7, 6:20, 24:20, 24:25, 25:9, 25:12, 27:16, 27:17, 28:7
**claiming** [1] - 10:17
**claims** [13] - 3:5, 3:6, 3:8, 3:17, 3:19, 10:22, 27:18, 28:9, 28:17, 28:22, 28:24, 29:2, 30:4
**Clark** [1] - 26:22
**Clarkson** [1] - 1:14
**clash** [1] - 12:6
**clear** [4] - 10:11, 10:20, 10:23, 10:24
**clearly** [2] - 6:22, 9:14
**CLERK** [2] - 2:1, 30:10
**client** [1] - 18:6
**client's** [1] - 11:24
**Cnty** [1] - 23:19
**Co** [2] - 24:4, 24:6
**color** [1] - 24:23
**coming** [3] - 5:10, 5:12, 12:13
**commanding** [1] - 6:11
**comment** [1] - 4:22
**comments** [1] - 10:20
**commissary** [2] - 4:24, 28:4
**committed** [1] - 24:22
**common** [1] - 6:10
**competent** [1] - 4:20
**complained** [2] - 8:18, 8:19
**complaining** [3] - 8:20, 8:22, 8:24
**Complaint** [3] - 27:1, 27:12, 29:23
**complaint** [11] - 6:5, 6:7, 8:16, 18:19, 18:20, 18:21, 20:14, 20:16, 20:25, 22:17, 27:3
**complaints** [2] - 8:22, 12:12
**complete** [1] - 24:16
**completely** [1] - 4:9
**comprehensive** [1] - 5:4
**concerned** [1] - 5:15
**concerning** [1] - 24:17
**conclude** [2] - 15:12, 15:24
**concludes** [1] - 30:11
**conclusory** [2] - 6:23, 20:20
**conduct** [11] - 3:12, 4:2, 4:5, 8:24, 14:18, 21:18, 25:22, 25:24, 27:21, 28:21, 29:1
**conducted** [2] - 14:6, 14:7
**confirm** [1] - 26:5
**confiscated** [1] - 28:3
**confiscation** [1] - 11:6
**congratulating** [1] - 15:4
**considering** [1] - 23:23
**consistent** [1] - 30:6
**constitute** [1] - 18:7
**constituted** [1] - 9:7

**constitutes** [1] - 17:3
**Constitution** [1] - 24:22
**constitutional** [6] - 10:15, 11:1, 11:7, 11:15, 25:1, 27:25
**construed** [1] - 28:13
**contact** [4] - 3:14, 5:23, 5:24
**contain** [2] - 26:9, 26:11
**contained** [2] - 7:10, 19:22
**content** [3] - 8:10, 26:14
**contention** [2] - 25:25, 26:23
**context** [1] - 24:24
**continue** [2] - 13:20, 16:21
**continued** [1] - 5:9
**continues** [2] - 5:14, 5:15
**continuing** [1] - 2:13
**contradiction** [1] - 15:5
**contrast** [1] - 27:17
**cooperate** [1] - 5:5
**Corp** [2] - 23:14, 24:6
**Correct** [1] - 1:24
**correct** [1] - 15:18
**Correction** [1] - 1:8
**Correctional** [3] - 1:11, 23:8, 26:3
**Corrections** [8] - 2:7, 2:20, 12:9, 15:15, 23:2, 23:8, 29:22, 30:5
**CORRECTIONS** [1] - 1:7
**correspondence** [1] - 26:10
**Cosala** [2] - 3:25, 29:3
**Counsel** [7] - 12:22, 16:4, 17:21, 20:6, 21:23, 22:8, 22:12
**counsel** [7] - 2:9, 11:18, 20:8, 21:24, 22:18, 22:24, 22:25
**Counsels** [1] - 30:8
**COUNSELS** [1] - 2:4
**counterpart.")** [1] - 28:14
**counts** [1] - 17:16
**Counts** [4] - 28:15, 29:15, 29:18, 29:25
**County** [1] - 20:12
**course** [3] - 5:13, 10:2, 13:5
**Court** [10] - 2:19, 4:9, 14:24, 23:7, 23:11, 26:14, 29:18, 29:25, 30:6, 30:11
**court** [6] - 2:2, 11:11, 11:12, 13:3, 20:11, 23:24
**COURT** [37] - 1:1, 2:1, 2:3, 2:5, 2:14, 2:18, 4:11, 6:10, 7:9, 10:7, 11:4, 11:16, 11:18, 12:22, 13:9, 13:15, 13:20, 13:22, 15:16, 15:20, 16:1, 16:3, 16:11, 16:7, 16:20, 17:21, 18:15, 18:22, 19:7, 20:6, 21:11, 21:23, 22:8, 22:12, 22:21, 22:24, 30:10

**court's** [1] - 24:9
**Court's** [1] - 11:21
**Courthouse** [1] - 1:14
**Crating** [1] - 24:4
**create** [3] - 10:4, 14:3, 14:12
**created** [3] - 3:24, 20:3, 29:9
**credibility** [5] - 19:1, 19:6, 19:10, 19:13, 23:24
**CRR** [1] - 1:25
**crucial** [1] - 29:12
**cry** [1] - 26:18
**Curley** [1] - 24:7
**current** [1] - 1:11
**cut** [1] - 16:7
**Cutolo** [1] - 2:11
**CUTOLO** [1] - 1:19

## D

**D.N.J** [2] - 28:2, 28:12
**danger** [2] - 4:17, 9:7
**dangerous** [2] - 3:23, 29:7
**date** [1] - 3:13
**dealt** [1] - 12:14
**Dec** [1] - 29:22
**December** [2] - 10:2, 11:21
**decide** [4] - 17:1, 18:2, 18:9, 24:10
**decided** [1] - 14:17
**deciding** [1] - 24:8
**decision** [3] - 23:3, 29:17, 30:7
**defeat** [1] - 27:15
**defendant** [1] - 4:18
**Defendant** [21] - 3:1, 3:3, 4:1, 14:15, 15:2, 15:12, 18:11, 20:16, 20:18, 25:21, 25:22, 26:23, 27:5, 27:10, 27:21, 27:22, 28:2, 28:18, 28:23, 29:19, 29:23
**Defendant's** [3] - 4:11, 13:24, 22:9
**Defendants** [22] - 1:13, 1:22, 2:16, 2:19, 2:22, 2:23, 2:24, 3:7, 3:10, 3:11, 3:12, 3:14, 3:15, 3:18, 17:24, 23:7, 27:18, 28:10, 28:20, 28:22, 30:1
**Defendants'** [3] - 4:4, 27:15, 27:19
**Defs** [1] - 28:4
**deliberate** [8] - 4:14, 4:15, 6:16, 9:2, 10:5, 14:15, 17:3, 25:10
**deliberately** [3] - 3:16, 8:14, 25:3
**deliberatively** [1] - 5:6
**Dellarciprete** [1] - 25:5
**denial** [1] - 10:15
**denied** [2] - 10:18, 14:20

**denies** [2] - 7:3, 7:15
**deny** [2] - 5:14, 19:25
**Department** [5] - 2:7, 2:20, 23:2, 23:8, 30:5
**DEPARTMENT** [1] - 1:7
**dependent** [1] - 6:14
**deposition** [7] - 6:9, 7:6, 19:2, 19:6, 19:7, 26:7, 26:8
**deprivation** [1] - 25:3
**deprived** [1] - 25:1
**Dept** [1] - 29:21
**DEPUTY** [2] - 2:1, 30:10
**Deputy** [1] - 2:15
**despite** [1] - 26:10
**detailed** [1] - 12:10
**determination** [1] - 14:22
**determinations** [1] - 23:25
**determine** [2] - 12:19, 24:10
**determined** [1] - 19:11
**determining** [1] - 29:12
**deviated** [1] - 19:3
**DeVita** [3] - 4:23, 9:9
**di** [1] - 5:23
**Di** [3] - 3:25, 29:3
**different** [2] - 12:2, 14:2
**diluted** [1] - 10:14
**direct** [3] - 15:5, 18:5
**directive** [1] - 5:2
**directly** [2] - 12:6, 21:1
**disciplined** [1] - 7:8
**disclose** [1] - 27:13
**disclosed** [1] - 3:3
**disclosing** [2] - 3:2, 27:23
**disclosure** [1] - 3:4
**discovery** [5] - 14:6, 14:7, 19:17, 19:20, 20:2
**dismissed** [2] - 29:18, 30:4
**dismisses** [1] - 29:25
**dispute** [2] - 17:24, 23:15
**disputed** [6] - 4:6, 12:18, 14:3, 14:12, 17:1, 20:3
**Disputes** [1] - 23:21
**disregard** [2] - 4:19, 21:9
**disregarded** [4] - 6:24, 8:14, 9:19, 9:21
**disregards** [1] - 25:13
**DISTRICT** [3] - 1:1, 1:2, 1:17
**district** [1] - 23:24
**docket** [1] - 23:2
**Docket** [2] - 2:8, 27:3
**DOE** [2] - 1:12, 1:12
**done** [4] - 5:25, 6:3, 7:17, 16:5
**draw** [3] - 9:11, 19:21, 19:25
**drawn** [1] - 24:2
**drop** [1] - 5:7
**during** [1] - 19:5
**duty** [4] - 17:16, 17:25, 28:20, 29:12

## E

**early** [6] - 4:2, 12:3, 20:18, 25:23, 26:24, 27:6
**easily** [1] - 5:6
**East** [1] - 1:15
**ECF** [2] - 25:25, 28:5
**Edna** [3] - 1:8, 23:8, 26:3
**Eighth** [1] - 25:12
**either** [4] - 21:7, 28:18, 28:20, 29:23
**Elec** [1] - 24:6
**elected** [1] - 13:5
**element** [3] - 24:14, 24:17, 29:12
**Ellis** [15] - 2:16, 2:21, 3:2, 3:10, 10:19, 10:24, 18:3, 23:9, 26:21, 27:18, 27:22, 28:11, 28:18, 29:23, 30:1
**ELLIS** [1] - 1:10
**EMAR** [1] - 29:10
**emphasis** [1] - 3:25
**employee** [2] - 3:23, 29:8
**employees** [3] - 3:21, 29:5, 30:3
**employer** [2] - 3:20, 29:4
**employment** [2] - 3:21, 29:5
**enforceable** [1] - 27:25
**enforcing** [1] - 5:16
**engage** [1] - 23:25
**ensure** [2] - 17:16, 17:25
**entire** [2] - 19:19, 20:14
**entities** [1] - 30:2
**entitled** [4] - 11:3, 12:4, 12:8, 23:13
**ENTITY** [1] - 1:12
**Erick** [1] - 2:24
**ERICK** [1] - 1:9
**especially** [1] - 19:11
**ESQUIRE** [2] - 1:20, 1:22
**essential** [2] - 24:14, 24:17
**essentially** [1] - 12:11
**establish** [3] - 10:24, 24:14, 24:20
**et** [4] - 2:7, 23:2, 27:2
**evaluate** [2] - 21:2, 24:9
**event** [2] - 6:25, 9:2
**eventually** [1] - 5:9
**evidence** [24] - 3:8, 4:19, 4:20, 7:1, 7:3, 8:3, 9:5, 9:13, 9:18, 10:23, 13:24, 15:23, 17:8, 17:11, 17:12, 18:5, 18:24, 19:12, 23:25, 24:1, 24:9, 28:25
**evidentiary** [2] - 23:16, 27:9
**Ex** [1] - 28:5
**exactly** [1] - 14:5
**exception** [2] - 5:12, 5:13
**excessive** [2] - 25:14, 25:18

**excuse** [1] - 17:18
**Exhibit** [1] - 16:23
**existence** [2] - 24:14, 25:17

## F

**F.2d** [1] - 25:6
**F.3d** [6] - 23:19, 24:3, 24:4, 24:7, 24:19, 24:24
**face** [1] - 12:17
**facilities** [1] - 6:11
**facility** [4] - 2:25, 12:10, 12:13, 14:19
**Facility** [3] - 1:9, 23:9, 26:3
**fact** [17] - 4:6, 4:18, 4:20, 6:6, 7:7, 7:16, 10:4, 12:18, 14:3, 15:15, 17:1, 18:13, 19:18, 20:4, 23:12, 26:5, 26:10
**fact,"** [1] - 24:12
**facts** [9] - 4:16, 9:4, 14:12, 14:24, 20:2, 22:15, 22:18, 23:22, 24:18
**factual** [5] - 11:5, 12:4, 14:22, 18:2, 23:15
**fail** [4] - 3:19, 28:11, 28:22, 28:24
**failed** [4] - 2:23, 3:7, 4:3, 25:23
**failing** [1] - 25:8
**fails** [3] - 24:13, 25:9
**failure** [3] - 24:17, 26:12, 27:19
**fairly** [1] - 10:20
**familiarity** [1] - 15:6
**far** [3] - 7:20, 9:23, 26:17
**Farmer** [1] - 25:14
**fashion** [1] - 13:14
**favor** [2] - 14:13, 17:10
**favor."** [1] - 24:2
**favorably** [1] - 14:11
**fear** [1] - 27:12
**February** [4] - 4:3, 9:25, 25:23
**Fed** [1] - 23:13
**federal** [3] - 3:5, 3:17, 28:14
**Federal** [1] - 28:10
**female** [1] - 11:23
**fessed** [1] - 6:6
**few** [2] - 20:8, 21:25
**file** [4] - 14:8, 19:19, 19:22, 19:23
**filed** [2] - 18:18, 20:10
**finally** [1] - 8:12
**fired** [2] - 6:15, 21:16
**first** [12] - 2:5, 4:12, 4:25, 6:1, 7:14, 9:8, 9:21, 17:7, 17:19, 19:4, 19:8, 20:8
**Fisher** [1] - 1:14
**fit** [1] - 20:3

**fits** [1] - 13:12
**five** [13] - 6:2, 12:1, 12:5, 14:1, 14:2, 14:21, 16:9, 16:13, 16:18, 16:20, 16:25, 18:15, 20:9
**Five** [1] - 28:15
**folks** [1] - 22:2
**FOR** [1] - 1:2
**Ford** [1] - 1:25
**foresee** [1] - 29:11
**foreseen** [2] - 3:24, 29:8
**former** [1] - 1:11
**forth** [1] - 11:5
**forward** [2] - 5:4, 5:19
**four** [1] - 26:1
**Four** [3] - 29:15, 29:18, 29:25
**four-page** [1] - 26:1
**framed** [1] - 4:8
**frank** [1] - 16:4
**frat** [1] - 12:11
**front** [1] - 21:6
**Furthermore** [1] - 30:1

## G

**GENERAL** [1] - 1:21
**General** [1] - 2:15
**gentlemen** [1] - 4:8
**genuine** [4] - 23:12, 23:15, 24:11, 24:12
**given** [3] - 4:15, 9:10, 27:10
**Given** [1] - 26:11
**governing** [1] - 23:18
**grabbed** [1] - 11:10
**grant** [1] - 23:22
**great** [1] - 17:21
**Grp** [1] - 29:10
**guards** [2] - 14:18, 15:10
**guess** [2] - 8:17, 21:21
**guy** [2] - 5:11, 5:20

## H

**harassment** [1] - 27:24
**harassment,"** [1] - 28:6
**hard** [1] - 10:16
**hardly** [1] - 6:16
**harm** [5] - 3:24, 17:17, 17:25, 29:3, 29:9
**HAUCK** [1] - 1:7
**Hauck** [54] - 2:16, 2:20, 3:10, 4:2, 4:24, 5:5, 5:19, 5:25, 7:1, 7:2, 7:3, 7:15, 7:24, 8:5, 8:17, 9:5, 10:25, 12:2, 12:6, 12:18, 14:15, 14:20, 15:2, 15:12, 17:12, 18:3, 18:11, 19:1, 19:2, 20:16, 21:2, 21:13, 21:15, 23:9, 25:7, 25:21, 26:2, 26:7, 26:10, 26:14, 26:18, 26:23,

27:4, 27:10, 27:16, 27:17, 28:10, 28:23, 28:25, 29:19, 29:20
**Hauck's** [4] - 4:2, 4:5, 8:11, 11:24
**health** [1] - 25:14
**hear** [4] - 4:12, 10:7, 11:18, 22:2
**heard** [3] - 6:14, 19:8, 22:6
**hearing** [1] - 14:13
**hearsay** [3] - 6:19, 6:23, 7:5
**held** [2] - 3:20, 29:4
**herself** [3] - 5:14, 6:5, 13:3
**hiatus** [1] - 6:2
**himself** [1] - 9:5
**hiring** [2] - 28:15, 29:2
**hitting** [1] - 5:21, 8:22
**holds** [1] - 17:15
**Honor** [27] - 2:4, 2:10, 2:17, 4:10, 11:17, 11:20, 11:21, 12:1, 12:9, 13:4, 13:17, 14:10, 15:18, 16:10, 16:25, 17:18, 18:10, 18:23, 18:24, 19:21, 19:25, 20:5, 22:5, 22:6, 22:14, 22:22, 30:9
**HONORABLE** [1] - 1:17
**horrible** [1] - 5:11
**horseplay** [1] - 12:3
**house** [1] - 12:11
**hugging** [1] - 4:23
**HUN-L-464-07** [1] - 27:3
**Hunterdon** [1] - 20:11

## I

**i.e** [1] - 28:4
**ice** [1] - 5:21
**Id** [2] - 14:19, 26:3
**idea** [1] - 8:1
**identical** [1] - 28:14
**ignore** [1] - 17:13
**immaterial."** [1] - 24:19
**immediate** [5] - 8:11, 9:10, 10:14, 10:17
**immunity** [5] - 10:8, 10:11, 11:3, 18:10, 18:13
**impeach** [1] - 19:2
**impeachment** [1] - 19:14
**import** [1] - 13:18
**important** [1] - 9:17
**imposition** [1] - 29:12
**inaction** [2] - 11:23, 11:24
**inadmissible** [1] - 9:21
**inappropriate** [3] - 3:12, 5:20, 21:9, 25:22, 26:17
**Inc** [1] - 23:20
**incarcerated** [1] - 3:1
**incident** [2] - 17:5, 18:12
**included** [2] - 21:18, 23:5
**incompetence** [2] - 3:22,

29:7
**incorporate** [3] - 18:17, 18:20, 20:9
**indicated** [1] - 20:9
**indicates** [1] - 27:12
**indicating** [1] - 13:16
**indication** [2] - 6:16, 6:17
**indifference** [8] - 4:14, 4:15, 6:16, 9:3, 10:5, 14:16, 17:3, 25:10
**indifference"** [1] - 25:11
**indifferent** [5] - 3:16, 5:6, 8:14, 9:11, 25:3
**individual** [2] - 2:23, 3:9
**individually** [2] - 1:8, 1:10
**Indus** [2] - 24:4, 24:6
**inference** [8] - 4:17, 4:18, 9:4, 9:5, 9:11, 12:4, 19:21, 19:25
**inferences** [1] - 24:2
**information** [5] - 7:6, 7:10, 10:16, 19:22, 25:22
**informed** [3] - 20:17, 21:7, 27:4
**initial** [2] - 21:16, 29:17
**injury** [1] - 29:11
**inmate** [5] - 7:17, 15:25, 25:14, 26:3, 27:13
**inmates** [21] - 5:5, 5:10, 5:12, 5:18, 6:12, 9:1, 11:23, 12:2, 12:12, 14:2, 14:9, 14:21, 15:3, 15:6, 15:9, 16:10, 21:21, 22:16, 26:21, 27:11
**insists** [1] - 5:16
**instances** [1] - 26:16
**instead** [1] - 24:1
**instituting** [1] - 17:4
**insufficient** [2] - 10:4, 28:7
**insulates** [1] - 30:2
**intend** [1] - 22:1
**Intentional** [1] - 29:15
**intentional** [1] - 30:3
**internal** [1] - 29:13
**interpret** [1] - 22:19
**investigation** [5] - 5:1, 5:3, 5:4, 17:4, 19:5
**investigator** [2] - 5:9, 5:20
**involved** [1] - 6:12
**involvement** [1] - 25:5
**irrelevant** [2] - 21:17, 23:21
**issue** [13] - 4:6, 4:8, 4:14, 10:4, 10:5, 12:17, 14:7, 14:16, 18:8, 18:10, 18:13, 23:12, 24:11, 24:12, 30:6
**issued** [1] - 11:22
**issues** [3] - 18:2, 19:6, 19:10
**items** [3] - 4:24, 21:25, 28:3
**itself** [5] - 8:1, 8:15, 8:17, 15:5, 16:7

## J

**jail** [1] - 17:10
**JANETTE** [1] - 1:9
**JASON** [1] - 1:20
**Jason** [1] - 2:10
**Jeffrey** [2] - 2:20, 23:9
**JEFFREY** [1] - 1:10
**JERSEY** [2] - 1:2, 1:7
**Jersey** [9] - 1:15, 2:7, 2:20, 3:17, 23:2, 23:8, 24:3, 28:12, 30:5
**job** [1] - 17:21
**JOHN** [2] - 1:12
**Johnson** [13] - 2:16, 3:3, 3:10, 10:19, 10:25, 18:3, 27:18, 27:22, 28:3, 28:11, 28:18, 29:24, 30:1
**JOHNSON** [1] - 1:10
**Johnson's** [2] - 2:21, 23:10
**Judge** [2] - 11:8, 20:13
**judge** [1] - 4:13
**JUDGE** [1] - 1:17
**judgment** [14] - 2:21, 4:7, 9:22, 12:5, 13:11, 14:17, 14:23, 20:1, 23:10, 23:13, 23:22, 23:24, 24:9, 27:16
**Judgment** [1] - 23:10
**June** [11] - 3:13, 4:3, 4:22, 9:8, 10:3, 13:25, 25:24, 27:11, 29:1
**juror** [6] - 14:12, 14:22, 15:11, 15:19, 15:24, 27:9
**jury** [13] - 12:8, 12:19, 13:18, 17:1, 17:9, 18:2, 18:8, 19:11, 20:5, 21:7, 22:18, 22:19, 23:16
**justifiable** [1] - 24:2

## K

**Kaucher** [1] - 23:19
**Kay** [2] - 3:25, 29:3
**keep** [2] - 3:2, 27:23
**kind** [4] - 5:22, 5:24, 10:20, 20:10
**kit** [1] - 28:4
**kits** [1] - 11:13
**Klem** [1] - 24:7
**knowing** [2] - 14:20, 21:13
**knowledge** [13] - 3:15, 3:19, 4:5, 6:11, 13:10, 13:24, 15:17, 16:8, 20:24, 25:15, 25:16, 26:23, 29:3
**known** [6] - 8:14, 14:19, 15:17, 15:22, 18:12, 21:2
**knows** [2] - 9:3, 19:23

## L

**Lance** [2] - 2:21, 23:9
**LANCE** [1] - 1:10
**last** [3] - 3:13, 10:3, 22:9
**Law** [1] - 29:15
**law** [8] - 4:15, 9:15, 10:19, 10:24, 11:11, 14:17, 23:13, 28:11
**law."** [2] - 23:19, 24:23
**laws** [1] - 24:22
**learn** [1] - 8:12
**least** [8] - 4:5, 5:11, 8:6, 9:15, 10:5, 15:11, 19:3, 19:25
**left** [1] - 22:19
**Legal** [2] - 28:1, 28:8
**Lehman** [1] - 24:19
**less** [1] - 10:25
**letter** [38] - 7:9, 7:11, 7:20, 7:25, 8:2, 8:9, 8:10, 8:15, 8:16, 9:6, 9:20, 9:24, 10:12, 12:16, 12:17, 12:20, 12:21, 12:23, 13:6, 13:22, 14:10, 15:25, 16:1, 16:4, 16:6, 18:25, 19:23, 26:1, 26:6, 26:8, 26:9, 26:12, 26:16, 26:20
**letters** [4] - 7:15, 7:16, 7:17, 13:1
**level** [1] - 28:6
**liability** [1] - 30:3
**Liberty** [1] - 23:20
**light** [2] - 8:11, 19:11
**Lincoln** [1] - 29:10
**Lincoln-Mercury** [1] - 29:10
**LLC** [1] - 1:19
**Lobby** [1] - 23:20
**look** [4] - 8:9, 16:11, 21:25

## M

**Mahan** [3] - 1:8, 23:8, 26:3
**management** [3] - 12:15, 14:19, 17:6
**Mandel** [2] - 2:11, 2:12
**MANDEL** [1] - 1:19
**Marino** [1] - 24:4
**marked** [2] - 12:25, 13:1
**marks** [2] - 26:9, 26:11
**material** [6] - 4:6, 12:18, 20:4, 23:12, 23:17, 24:12
**Matsushita** [1] - 24:6
**matter** [11] - 2:6, 10:6, 20:11, 22:1, 22:25, 23:3, 23:13, 24:10, 28:11, 29:17, 30:8
**matters** [1] - 2:6
**mean** [5] - 5:18, 6:4, 8:3, 15:20, 17:2
**meaning** [1] - 11:24

**meeting** [1] - 17:6
**MELGAR** [2] - 1:9, 27:5
**Melgar** [28] - 2:24, 3:12, 4:23, 5:1, 5:2, 6:4, 6:5, 6:6, 8:13, 9:7, 9:19, 10:3, 10:10, 10:11, 11:25, 12:3, 18:5, 19:19, 20:11, 20:18, 21:16, 21:20, 25:8, 27:2, 27:20, 28:21, 29:1
**Melgar's** [9] - 3:13, 11:22, 25:22, 26:15, 26:18, 26:24, 27:10, 27:13, 27:23
**mentioned** [1] - 12:16
**Mercury** [1] - 29:10
**merely** [1] - 10:20
**merit** [1] - 11:4
**merits** [1] - 24:8
**MICHAEL** [1] - 1:17
**Michelle** [1] - 26:21
**might** [3] - 4:16, 5:22, 8:21
**mind** [5] - 8:16, 9:16, 9:24, 11:8, 14:16
**minimum** [2] - 12:7, 18:23
**minimus** [1] - 5:23
**misconduct** [2] - 11:23, 21:14, 21:15
**misspoke** [1] - 15:19
**months** [3] - 5:17, 8:16, 10:1
**Montone** [1] - 24:3
**Moreover** [2] - 26:13, 27:12
**morning** [6] - 2:3, 2:4, 2:6, 2:10, 2:17, 2:18
**Morra** [1] - 24:24
**most** [1] - 14:11
**Motion** [1] - 23:10
**motion** [9] - 4:11, 9:22, 12:4, 13:11, 20:1, 22:9, 23:23, 24:8, 27:15
**MOTION/DECISION** [1] - 1:7
**motions** [1] - 2:21
**movant** [1] - 23:12
**moves** [1] - 5:1
**moving** [3] - 2:22, 3:6, 24:1
**MR** [34] - 2:10, 2:15, 4:10, 4:13, 6:13, 7:13, 10:10, 11:8, 11:17, 11:20, 13:2, 13:12, 13:17, 13:21, 14:1, 15:18, 15:23, 16:2, 16:9, 16:15, 16:18, 16:23, 17:23, 18:17, 18:23, 19:10, 20:13, 21:12, 22:5, 22:6, 22:10, 22:13, 22:22, 30:9
**must** [5] - 9:14, 24:21, 25:4, 25:13, 25:17

## N

**N.J** [3] - 3:25, 29:3, 29:10
**N.J.S.A** [1] - 30:2
**nearly** [1] - 28:13

**necessarily** [1] - 24:18
**necessary** [1] - 25:11
**need** [3] - 13:10, 19:10, 20:24
**needs** [2] - 17:1, 18:2
**negligence** [10] - 3:19, 10:6, 17:16, 18:8, 28:16, 28:17, 28:22, 28:24, 29:2
**Negligent** [1] - 28:15
**nevertheless** [1] - 5:25
**NEW** [2] - 1:2, 1:21
**New** [8] - 1:15, 2:7, 2:19, 3:17, 23:2, 23:7, 28:11, 30:4
**newspapers** [1] - 8:23
**next** [1] - 22:2
**Next** [1] - 28:15
**Nicini** [1] - 24:23
**Nivi** [1] - 16:20
**NJ** [1] - 29:21
**NJCRA** [1] - 28:13
**nobody's** [1] - 10:17
**non** [2] - 24:1, 26:17
**non-moving** [1] - 24:1
**non-sexual** [1] - 26:17
**none** [1] - 8:2
**nonetheless** [1] - 4:18
**nonmoving** [2] - 23:17, 24:18
**nose** [2] - 15:13, 15:21
**note** [3] - 7:18, 7:19, 7:20
**notes** [1] - 17:19
**nothing** [5] - 5:7, 8:7, 20:19, 27:10
**notice** [21] - 4:2, 4:16, 4:21, 8:25, 11:24, 12:2, 12:7, 12:18, 14:2, 14:4, 14:5, 14:21, 15:12, 16:16, 17:2, 18:3, 18:6, 26:15, 26:19, 27:10
**NUMBER** [1] - 1:5
**number** [1] - 2:5
**Number** [3] - 2:8, 23:2, 27:3

## O

**objective** [1] - 25:16
**obtain** [1] - 18:13
**obtained** [1] - 19:17
**obviously** [1] - 7:15
**occurred** [1] - 10:1
**October** [1] - 1:16
**OF** [4] - 1:2, 1:7, 1:21
**offered** [1] - 28:25
**OFFICE** [1] - 1:21
**Officer** [21] - 1:12, 3:13, 4:2, 11:22, 11:25, 12:3, 12:9, 13:13, 13:15, 13:18, 13:23, 14:11, 15:1, 15:15, 18:25, 19:19, 26:15, 26:24, 27:2,

27:20, 27:23, 29:1
**officer** [2] - 15:7, 15:9
**officers** [5] - 2:25, 6:11, 6:15, 8:19, 12:11
**Officers** [2] - 25:8, 28:21
**official** [7] - 24:25, 25:2, 25:4, 25:12, 25:13, 25:17, 25:18
**omitted)** [1] - 29:14
**once** [3] - 3:3, 10:16, 19:3
**one** [9] - 5:12, 9:1, 9:11, 20:13, 22:7, 22:8, 22:10, 23:6
**Open** [1] - 2:2
**opinion** [1] - 11:22
**Opp'n** [1] - 25:25
**opposition** [4] - 4:1, 11:19, 16:24, 17:9
**Order** [1] - 30:6
**order** [3] - 11:21, 18:12, 23:6
**orders** [1] - 4:25
**others"** [1] - 27:8
**outcome** [1] - 23:18
**overwhelming** [1] - 8:12
**own** [3] - 15:5, 19:2, 27:20

## P

**page** [1] - 26:1
**Paragraph** [1] - 20:15
**particular** [5] - 3:9, 3:22, 21:1, 26:16, 29:6
**party** [3] - 11:9, 24:13, 24:15
**party's** [4] - 24:1, 24:8, 24:15, 24:18
**party,"** [1] - 23:17
**pause** [1] - 17:20
**people** [4] - 5:21, 7:7, 8:23, 17:10
**person** [1] - 24:23
**personal** [1] - 11:6
**personally** [2] - 20:17, 27:4
**persons** [1] - 3:25
**persons."** [1] - 29:9
**physical** [3] - 2:24, 11:23, 11:25
**physically** [3] - 12:14, 29:20, 29:24
**pictures** [1] - 15:3
**place** [1] - 11:10
**plaintiff** [3] - 2:12, 24:20, 29:11
**Plaintiff** [15] - 1:20, 2:22, 3:1, 3:5, 3:7, 3:11, 3:14, 3:15, 4:1, 4:4, 5:13, 5:24, 6:4, 11:5, 20:17, 25:1, 25:7, 25:9, 25:12, 25:21, 25:24, 26:1, 26:4, 26:20, 27:4, 27:21, 28:2, 28:18, 28:19, 28:24, 29:19, 29:24

**Plaintiff's** [9] - 3:16, 3:19, 26:12, 27:17, 27:18, 28:9, 28:17, 28:21, 28:24
**Plaintiff."** [1] - 29:21
**pleading** [2] - 16:24, 18:18
**pleadings** [2] - 19:16, 20:3
**point** [14] - 6:8, 7:25, 9:10, 9:15, 21:13, 21:14, 21:16, 21:17, 22:7, 22:8, 22:10, 22:20
**pointing** [1] - 13:23
**policies** [1] - 12:13
**policy** [1] - 15:6
**posing** [1] - 15:3
**position** [1] - 10:8
**potato** [1] - 11:13
**potential** [1] - 29:11
**power** [1] - 28:20
**preclude** [1] - 23:22
**precludes** [1] - 4:6
**prejudice** [2] - 29:18, 29:25
**prepared** [1] - 23:3
**present** [1] - 12:8
**presented** [3] - 19:12, 19:13, 20:4
**Presently** [1] - 23:7
**PREUSS** [13] - 1:22, 2:15, 4:13, 6:13, 7:13, 10:10, 11:8, 11:17, 20:13, 21:12, 22:5, 22:22, 30:9
**Preuss** [4] - 2:15, 4:12, 11:16, 20:7
**prevent** [3] - 20:19, 27:6, 28:20
**previous** [1] - 29:17
**prison** [12] - 11:9, 12:15, 13:13, 14:19, 15:6, 15:7, 17:5, 24:25, 25:2, 25:4, 25:12, 28:3
**prisoner's** [1] - 25:11
**Prisoners'** [2] - 28:1, 28:7
**problem** [1] - 12:22
**proceedings** [1] - 6:4
**produced** [3] - 19:20, 19:24, 20:2
**promise** [1] - 22:10
**proof** [3] - 7:22, 24:16, 24:17
**properly** [1] - 4:9
**proposed** [1] - 13:11
**protect** [4] - 2:23, 25:8, 25:24, 27:19
**protected** [1] - 24:21
**provide** [1] - 17:1
**provided** [3] - 12:2, 14:6, 16:15
**provides** [1] - 14:17
**psychologist** [1] - 17:6
**public** [3] - 17:8, 17:14, 30:2
**purchased** [1] - 28:3

**pure** [1] - 6:19
**purposes** [2] - 19:13, 19:14
**pursuant** [1] - 30:1
**push** [1] - 5:9
**put** [4] - 14:2, 23:3, 26:14, 26:18
**puts** [1] - 5:2

## Q

**qualified** [5] - 10:8, 10:11, 11:3, 18:10, 18:13
**qualities** [2] - 3:24, 29:9
**questions** [2] - 14:5, 14:10
**quick** [1] - 21:25
**quite** [1] - 13:16
**quote** [1] - 20:16
**quoting** [1] - 24:4

## R

**Radio** [1] - 24:6
**raise** [2] - 12:17, 21:12
**raised** [4] - 10:9, 14:10, 18:11, 21:13
**rarely** [1] - 14:16
**rather** [1] - 27:20
**reaction** [1] - 17:4
**read** [3] - 18:25, 21:15, 23:4
**reads** [1] - 11:22
**really** [2] - 5:5, 8:11
**reason** [6] - 3:22, 10:12, 10:13, 10:23, 11:2, 29:6
**reasonable** [6] - 12:4, 14:12, 15:11, 15:19, 23:16, 27:9
**reasonably** [2] - 3:23, 29:8
**reasons** [2] - 11:14, 18:14
**receipt** [1] - 26:10
**receive** [1] - 14:4
**received** [9] - 7:23, 8:6, 12:7, 12:18, 13:6, 14:4, 25:21, 26:11
**recess** [3] - 21:24, 22:3, 22:23
**recognize** [2] - 22:14, 22:17
**record** [9] - 4:20, 8:2, 8:7, 10:7, 14:25, 15:24, 23:1, 23:4
**reference** [3] - 18:17, 18:21, 20:9
**references** [1] - 26:16
**refers** [1] - 27:8
**regard** [11] - 6:13, 6:19, 9:16, 10:4, 10:10, 10:19, 11:5, 11:12, 12:23, 15:1, 15:6
**regarding** [2] - 12:21, 25:22
**regularly** [1] - 12:12
**related** [1] - 3:6
**relevant** [1] - 20:14
**relies** [1] - 26:1

**remember** [3] - 4:13, 7:21, 26:8
**removed** [1] - 9:23
**renders** [1] - 24:18
**repeatedly** [1] - 28:13
**reply** [2] - 20:7, 22:9
**report** [7] - 4:22, 5:25, 6:3, 20:19, 21:16, 21:18, 27:7
**reported** [2] - 20:22, 20:23
**required** [3] - 1:24, 3:17, 15:16
**requirement** [1] - 25:15
**requires** [3] - 4:17, 24:25, 29:2
**respect** [5] - 2:22, 3:9, 28:17, 28:23, 30:4
**response** [1] - 8:12
**responsibilities** [1] - 28:19
**responsible** [2] - 3:20, 29:4
**result** [1] - 9:4
**retaliated** [1] - 3:3
**retaliation** [2] - 8:21, 27:13
**Rights** [2] - 3:18, 28:10
**rights** [3] - 3:6, 10:15, 10:18
**rise** [5] - 2:1, 4:17, 27:25, 28:6, 30:10
**risen** [1] - 11:7
**risk** [11] - 3:24, 4:5, 8:15, 25:3, 25:14, 25:18, 26:15, 26:19, 26:24, 29:3, 29:9
**Roberson** [1] - 18:4
**ROBERT** [1] - 1:22
**Robert** [1] - 2:15
**Robin** [2] - 26:22, 27:13
**Rode** [1] - 25:5
**role** [1] - 24:9
**rolled** [1] - 8:23
**RPR** [1] - 1:25
**rug** [2] - 13:7, 13:9
**rule** [1] - 21:25
**rulers** [1] - 5:21
**rules** [1] - 5:17
**ruling** [2] - 22:1, 22:4
**rumors** [3] - 6:14, 7:4, 7:5
**run** [2] - 12:11, 13:14

## S

**safe** [2] - 17:17, 17:25
**safety."** [1] - 25:14
**satisfied** [1] - 23:11
**scope** [2] - 3:21, 29:5
**seated** [1] - 2:3
**Second** [1] - 27:1
**Section** [1] - 1:24
**see** [7] - 7:15, 7:22, 7:23, 14:7, 22:24, 23:20, 24:5
**seeing** [2] - 7:21, 26:8
**seizing** [1] - 11:14

**seizure** [1] - 11:12
**Sena** [1] - 2:10
**SENA** [24] - 1:20, 2:10, 2:11, 4:10, 11:20, 13:2, 13:12, 13:17, 13:21, 14:1, 15:18, 15:23, 16:2, 16:9, 16:15, 16:18, 16:23, 17:23, 18:17, 18:23, 19:10, 22:6, 22:10, 22:13
**sent** [5] - 7:23, 8:6, 9:24, 12:20, 26:6
**separate** [3] - 18:18, 20:10, 27:1
**sergeants** [1] - 18:4
**series** [1] - 4:16
**serious** [2] - 18:2, 25:2
**seriously** [1] - 9:14
**set** [1] - 11:5
**Seven** [3] - 29:15, 29:18, 29:25
**several** [2] - 5:17, 5:22
**sewing** [2] - 11:13, 28:4
**sexual** [18] - 2:23, 3:14, 5:23, 5:24, 8:24, 11:22, 11:25, 12:3, 19:4, 21:14, 21:15, 21:18, 26:15, 26:17, 26:18, 27:11, 27:14
**sexually** [3] - 6:12, 29:20, 29:24
**shielded** [1] - 19:18
**shift** [1] - 18:4
**SHIPP** [1] - 1:17
**short** [2] - 20:7, 22:3
**show** [9] - 3:7, 3:11, 3:15, 8:13, 16:14, 18:15, 25:10, 25:13, 28:25
**showing** [4] - 24:13, 24:25, 25:10, 29:2
**shown** [2] - 28:18, 28:19
**shows** [1] - 17:12
**side** [1] - 7:22
**signed** [2] - 8:1, 12:25
**simply** [4] - 4:16, 10:4, 12:14, 13:4
**sit** [1] - 22:2
**sitting** [1] - 2:12
**six** [1] - 6:2
**Six** [3] - 29:15, 29:18, 29:25
**sleeping** [2] - 9:1, 15:9
**slept** [1] - 12:12
**slightly** [1] - 17:20
**Small** [1] - 2:25
**Smalls** [13] - 3:12, 6:7, 6:10, 7:1, 12:10, 13:13, 13:19, 13:23, 14:11, 15:1, 18:25, 21:19, 25:9
**SMALLS** [1] - 1:10
**Smalls'** [7] - 6:8, 6:13, 7:5, 13:15, 27:20, 28:21, 29:1
**SOF** [1] - 28:4

**somewhat** [1] - 5:23
**soon** [2] - 5:25, 6:2
**sorry** [1] - 15:18
**sort** [1] - 12:11
**specific** [2] - 13:16, 29:20
**Specifically** [1] - 27:21
**specifically** [1] - 7:2
**speed** [1] - 4:25
**spin** [1] - 22:15
**stamp** [5] - 7:19, 7:20, 13:5, 13:8
**stamped** [2] - 12:25, 13:4
**stand** [1] - 11:12
**standard** [2] - 9:2, 18:11
**standing** [1] - 2:12
**starts** [1] - 6:3
**state** [7] - 3:5, 3:6, 9:16, 14:16, 16:15, 20:11, 24:23
**STATE** [1] - 1:7
**State** [11] - 1:11, 1:15, 2:7, 2:19, 17:24, 23:1, 23:7, 28:10, 29:15, 29:21, 30:4
**state's** [1] - 15:5
**statement** [4] - 6:23, 20:20, 20:21, 26:5
**statements** [1] - 22:17
**STATES** [2] - 1:1, 1:17
**states** [1] - 13:21
**States** [2] - 1:14, 24:22
**stating** [1] - 15:2
**statutory** [2] - 17:16, 17:25
**steps** [1] - 25:23
**still** [3] - 6:5, 6:6, 19:18
**stopped** [1] - 8:19
**Streater** [4] - 4:22, 9:9, 26:22, 27:13
**Street** [1] - 1:15
**strict** [1] - 12:13
**subjective** [2] - 9:16, 25:16
**submit** [1] - 13:4
**submitted** [1] - 26:4
**substance** [1] - 21:5
**sufficient** [11] - 12:17, 14:3, 17:1, 20:3, 23:15, 24:13, 25:10, 25:18, 26:14, 27:9, 27:15
**sufficiently** [1] - 25:2
**suggest** [1] - 8:18
**suggests** [1] - 8:8
**suit** [1] - 23:18
**summary** [12] - 2:21, 4:6, 9:22, 12:5, 13:11, 14:17, 14:23, 20:1, 23:22, 23:24, 24:8, 27:15
**Summary** [2] - 23:10
**superior** [1] - 20:20
**superiors."** [1] - 27:7
**supervisors** [1] - 18:4
**supervisory** [1] - 28:19

**Supp** [2] - 28:1, 28:8
**supplemental** [1] - 21:18
**support** [7] - 3:8, 9:22, 20:10, 22:15, 25:25, 26:22, 28:7
**supported** [1] - 19:17
**sustain** [1] - 25:11
**sweep** [1] - 13:7
**sweeping** [1] - 13:9
**sworn** [1] - 22:16

**T**

**table** [1] - 22:25
**talks** [1] - 9:25
**Tasha** [1] - 26:21
**tea** [1] - 11:9
**terminating** [1] - 21:19
**termination** [2] - 6:3, 21:20
**terms** [1] - 28:13
**testified** [3] - 13:3, 13:13, 26:7
**testify** [4] - 6:10, 6:22, 12:21, 21:6
**testimony** [17] - 6:8, 6:13, 6:19, 6:25, 7:6, 8:5, 12:10, 13:13, 13:15, 13:18, 13:23, 14:11, 14:14, 15:1, 15:7, 15:8, 18:25
**THE** [37] - 1:2, 2:1, 2:3, 2:5, 2:14, 2:18, 4:11, 6:10, 7:9, 10:7, 11:4, 11:16, 11:18, 12:22, 13:9, 13:15, 13:20, 13:22, 15:16, 15:20, 16:1, 16:3, 16:11, 16:17, 16:20, 17:21, 18:15, 18:22, 19:7, 20:6, 21:11, 21:23, 22:8, 22:12, 22:21, 22:24, 30:10
**themselves** [2] - 7:5, 14:3
**thereafter** [1] - 5:3
**therefore** [1] - 15:21
**Therese** [5] - 7:9, 8:1, 18:18, 26:2, 26:22
**threatened** [2] - 3:2, 27:23
**three** [1] - 11:2
**Three** [1] - 28:15
**throwing** [1] - 5:21
**tight** [1] - 22:2
**Title** [1] - 1:24
**today** [5] - 2:5, 2:13, 2:19, 14:24, 30:7
**took** [2] - 6:18, 17:7
**torn** [1] - 12:14
**tort** [2] - 3:6, 10:22
**tortfeasor** [1] - 29:13
**torts** [2] - 3:20, 29:5
**Torts** [1] - 29:16
**totality** [2] - 17:11, 19:15
**totally** [2] - 6:14, 7:14
**transcript** [1] - 23:5

**Trenton** [1] - 1:15
**trial** [6] - 2:13, 6:22, 8:4, 19:2, 19:13, 24:11
**trial."** [1] - 24:16
**true** [3] - 13:17, 17:15, 18:19
**True** [1] - 1:7
**truth** [2] - 24:10, 26:25
**trying** [1] - 13:7
**type** [1] - 14:5

**U**

**U.S** [8] - 23:14, 23:20, 23:23, 24:5, 24:6, 24:11, 24:16, 25:15
**U.S.C** [1] - 1:24
**unauthenticated** [1] - 7:14
**under** [10] - 3:17, 9:15, 13:7, 13:9, 15:13, 15:21, 23:18, 24:23, 27:25, 28:7
**unequivocal** [1] - 20:21
**unfitness** [2] - 3:22, 29:7
**unit** [4] - 5:2, 5:3, 9:7, 10:2
**UNITED** [2] - 1:1, 1:17
**United** [2] - 1:14, 24:22
**unnecessary** [1] - 23:21
**untraditional** [1] - 14:20
**up** [7] - 4:23, 6:6, 8:23, 11:12, 12:14, 17:5, 17:13
**upper** [3] - 12:15, 14:18, 17:6

**V**

**vacation** [1] - 6:1
**vaguely** [1] - 27:7
**verbal** [1] - 27:24
**verbally** [1] - 27:22
**verified** [2] - 18:20, 22:17
**versus** [2] - 2:7, 23:1
**view** [1] - 21:16
**viewed** [1] - 14:11
**violated** [2] - 10:25, 25:7
**violation** [4] - 11:7, 11:15, 24:21, 27:25
**violations** [2] - 3:5, 28:9
**vs** [1] - 1:6
**vulgar** [1] - 10:20

**W**

**weigh** [1] - 13:18
**weighing** [1] - 23:25
**whatsoever** [3] - 8:3, 10:23, 10:24
**Whetzel** [1] - 25:19
**whole** [1] - 17:5
**widespread** [1] - 15:9
**WILLIAM** [1] - 1:7
**William** [2] - 2:20, 23:9
**wind** [2] - 6:17, 9:8

**WL** [1] - 28:12
**Women** [2] - 1:9, 23:9
**word** [1] - 22:9
**worthwhile** [1] - 4:13
**write** [1] - 7:18
**written** [2] - 14:21, 26:2
**wrongdoing** [1] - 30:3
**wrongs."** [1] - 25:5

**Y**

**years** [2] - 7:16, 17:14

**Z**

**Zdonowski** [1] - 5:19
**Zenith** [1] - 24:6

**"**

**"[A** [1] - 24:16
**"[A]n** [1] - 29:4
**"a** [1] - 23:15
**"Ability** [1] - 29:11
**"abusive** [1] - 27:8
**"Afdahl** [1] - 27:8
**"affect** [1] - 23:18
**"any** [1] - 29:19
**"calculated** [1] - 28:6
**"Courts** [1] - 28:13
**"Defendant** [1] - 27:4
**"deliberate** [1] - 25:11
**"demonstrate** [1] - 24:21
**"In** [1] - 23:23
**"knows** [1] - 25:13
**"meaning** [1] - 25:16
**"no** [1] - 24:12
**"personal** [1] - 25:4
**"playing,"** [1] - 26:17
**"there** [1] - 23:11
**"to** [1] - 24:13

**§**

**§** [7] - 24:20, 25:7, 27:16, 27:17, 27:18, 28:1, 28:7